552 So.2d 14 (1989)
Cassandra COTTON, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 88-821.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
*15 Charles W. Seaman, Lisa C. McCowen, Natchitoches, for plaintiff-appellee.
Stafford, Stewart & Potter, James D. Kirk, Alexandria, for defendant-appellant.
Before YELVERTON, KNOLL and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether defendant's employee's health plan covers expenses incurred by the plaintiff for the capping of her teeth and whether or not judicial interest can run on an award for court costs.
Cassandra Cotton (hereinafter plaintiff), an employee of Wal-Mart, brought suit against Wal-Mart Stores, Inc. (hereinafter defendant) to recover benefits for treatment of temporal mandibular joint syndrome (hereinafter TMJS) under the Wal-Mart Associates Group Health Plan (hereinafter the Plan). After a trial on the merits, the trial court rendered judgment in favor of the plaintiff and against defendant in the sum of $3,803.35, together with legal interest, from date of judicial demand, until paid, which money judgment also included certain expenses taxed as court costs. A formal written judgment was signed. Defendant timely appeals. We affirm.

FACTS
While plaintiff was employed by Wal-Mart, she began experiencing severe headaches and pain in her jaw. As a result, she consulted Dr. Steven M. Brown, III in June, 1985. Dr. Brown, a dentist, performed selective grinding of plaintiff's teeth and prescribed muscle relaxants. This treatment is considered to be a conservative treatment for TMJS, but it provided no relief for plaintiff. After another attempt to adjust the plaintiff's bite, which failed, Dr. Brown provided plaintiff with an acrylic appliance that covers the teeth, *16 more commonly referred to as a splint. This splint provided relief from the pain, but plaintiff continued to suffer from the headaches. At that point, Dr. Brown referred plaintiff to Dr. Carlton, an oral surgeon, to see if there was a problem with the mandibular joint which could be corrected through surgery.
Dr. Carlton saw plaintiff on August 9, 1985 at which time plaintiff complained of headaches in the temporal region that had bothered her for about three months. Dr. Carlton testified in his deposition as follows:
"Examination revealed some tenderness in her cranial facial muscles, specifically the right masseter muscle which is a large muscle that extends from the cheek bone to the jaw, primarily on the right side. She [plaintiff] was able to open her mouth widely and there were no particular dysfunctions of the jaw. She had a markedly abnormal bite, as I recall ..."
Dr. Carlton also stated that plaintiff's symptoms were included within those common to TMJS. Dr. Carlton did not recommend surgery, but suggested to Dr. Brown that he alter the splint.
Dr. Brown then continued to gradually add acrylic to adjust the thickness of plaintiff's splint. The splint became unusually thick, as plaintiff's bite was opened four or five millimeters in the back, before she was able to obtain relief. The splint interfered with plaintiff's speech to the extent that Wal-Mart no longer allowed plaintiff to operate the cash registers. It also interfered with plaintiff's eating and drinking. Plaintiff, however, wore the splint constantly, otherwise her headaches returned.
Finally, after plaintiff had worn the splint for about one year and Dr. Brown felt that plaintiff's condition had progressed to a position where the relationship between her ligaments, muscle attachments, and joints were in harmony, thus stopping the stress on her muscles and, thereby, the headaches, Dr. Brown decided to permanently adjust plaintiff's bite by capping, or crowning, her teeth. Plaintiff's molars, bicuspids, cuspids, and incisors across the top were capped, and after this was done, plaintiff did not have to use the splint and had no more complaints of pain or headaches.
Dr. Brown further stated that if it were not for the TMJS, there would have been no need for plaintiff's teeth to be capped and that the capping, in this instance, was performed to correct the TMJS, not for dental reasons. Dr. Brown opined that the use of orthodontics, in plaintiff's case, would not have solved her problem. Dr. Brown, while admitting that the classification of TMJS as either medical or dental "seems to be a big boogaboo among a lot of people," stated that "it seems to be classified as a medical problem, but treated by the dental profession." Dr. Carlton acknowledged in his deposition that capping is an accepted form of treatment for TMJS. He even stated that it is often required to normalize the bite to eliminate TMJS.
Section V of the Plan entitled Major Medical Benefits, under which plaintiff claims she is entitled to benefits, lists as a "covered charge":
"N) Charges by a Doctor of Dentistry or Dental Surgeon for treatment of fractures and dislocations of the jaw and for cutting procedures in the oral cavity, including the surgical removal of impacted wisdom teeth, but excluding all care of the teeth and gums."
The Plan also lists in Section VI, Limitations and Exclusions, the following limitation and exclusion:
"D) charges for any treatment or service by a Doctor of Dentistry or Dental Surgeon except as specifically provided by the Major Medical Benefits and if, as the result of an ACCIDENT, the expenses are incurred within twelve (12) months after the ACCIDENT, unless treatment is delayed beyond this period of time due to the medical condition or future growth of the patient."
On February 19, 1986, an amendment was made to the Plan, effective March 1, 1986, which reads in pertinent part, as follows:
"DENTAL BENEFITS: Limited to surgical removal of impacted teeth and treatment of accidental injury to teeth *17 if treatment is within 12 months of the injury date.
* * * * * *
TMJ SYNDROME: Lifetime maximum of $5,000.00 per Plan participant. Within this $5,000.00, a maximum of $500.00 will be allowed for splinting and a maximum of $750.00 will be allowed for orthodontics.
* * * * * *
This list is not intended to be inclusive of all benefits and limitations of the Wal-Mart Plan. All charges submitted to the Wal-Mart Plan are subject to the provisions of the legal Plan Document."
On February 2, 1987, the defendant wrote a letter to Dr. Brown in response to his previous letter inquiring as to why he had not received payment of his bill for the capping of plaintiff's teeth. Defendant's letter reads:
"Dear Dr. Brown:
Thank you for your letter regarding coverage for Cathy Cotton's TMJ. Under the Wal-Mart Group Health Plan any charges for the medical treatment of TMJ is covered subject to the following limitations: $5000 lifetime maximum, $750 for orthodontics, $500 for splinting. Upon review of her X-rays, our Medical Advisory Board recommended no coverage for the $4,015.00 crowns as they are dental rather than medical in nature. Under the Wal-Mart Group Health Plan there are no dental benefits.
If you have additional documentation to submit we will be glad to review the charges again."
Dr. Brown wrote the defendant again explaining that the plaintiff had a "severe medical problem (headaches) as a result of TMJ dysfunction" and that the crowning, though dental, was the preferred treatment for plaintiff's TMJS. The defendant's response was another denial of benefits in another letter to Dr. Brown stating:
"Our Dental Consultant has reviewed the charges for Cathy Cotton. The recommendation was that the $4015.00 charge for crowns are not eligible for coverage under the guidelines of the Wal-Mart Group Health Plan. Benefits for TMJ are allowable for three types of treatment: Splinting or appliance, orthodontics, and/or surgery. Since these expenses do not fall within our scope of coverage and are dental in nature there is no coverage available."
Eventually, the defendant did pay Dr. Brown $750.00, the maximum allowed for orthodontics, stating that "the reviewing physician on our Medical Advisory Board has indicated orthodontics and crowns accomplish the same purpose ..." This $750.00 payment was not made until January, 1988, after plaintiff had obtained counsel.
Based on these facts and these provisions of the Plan, the trial court concluded that the Plan did provide benefits for the cost of capping plaintiff's upper teeth as treatment of her TMJS. The trial court awarded plaintiff judgment for the amount of her medical bills and certain expenses taxed as court costs, less the $750.00 already paid by the defendant, with legal interest from date of judicial demand, until paid. Defendant appeals alleging that the trial court erred in finding that the Plan provided benefits for plaintiff's dental treatment and in permitting interest to run on the award of expenses taxed as court costs.

COVERAGE BY THE PLAN
Defendant argues that the provisions in the Plan do not provide coverage for the cost of the capping of plaintiff's teeth.
Defendant points out that the Plan provides in Section VI, Limitations and Exclusions, Paragraph D, that benefits are not payable for charges for any treatment or service by a doctor of dentistry or a dental surgeon except as specifically provided by the Major Medical Benefits portion of the Plan. Defendant then argues that Section V, Major Medical Benefits, Covered Charges, Paragraph N, provides that covered charges only include charges by a doctor of dentistry or a dental surgeon for treatment of fractures, dislocations of the jaw, or for oral surgery and that the amendment of the Plan, dated February 19, 1986, *18 which was in effect at the time plaintiff's teeth were capped, provides covered benefits for TMJS and limits such benefits to a lifetime maximum of $5,000.00 which includes a maximum of $500.00 for splinting and a maximum of $750.00 for orthodontics. For these reasons defendant contends that the Plan only provides coverage for three treatments by a dentist: fractures, dislocations, and oral surgery, with the amendment to the Plan only adding coverage for treatment by a dentist for orthodontics and splinting, subject to dollar limitations and limiting the maximum coverage for TMJS treatment to $5,000.00. Defendant contends that since neither the Plan nor the amendment provide covered benefits for capping of teeth, that the charges by a dentist for the capping of plaintiff's teeth are not covered under the express provisions of the Plan for dental benefits and that no benefits are owing. Defendant further contends that since the plaintiff did not have a fracture, a dislocation, oral surgery, or orthodontic treatment, since capping is not orthodontic treatment, that plaintiff was only treated by a dentist with a splint which was later replaced by the capping, and therefore it is only liable for the maximum of $750.00 which it paid, because orthodontics and capping accomplish the same purpose.
In short, defendant argues that there was no intent to include capping of teeth within the provisions of coverage and that the Plan, in fact, evidences a specific intent to exclude capping of teeth as a covered benefit. Defendant's interpretation may have been what was intended by the Plan and its amendment, but it is not what is expressed in writing. Though "interpretation of a contract is the determination of the common intent of the parties," "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.C.C. Arts. 2045 and 2046. Furthermore, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.C.C. Art. 2050. Of course, Louisiana law is so clear that any ambiguities in a contract are to be construed against the drafter of a contract that no citation of authorities is necessary.
Section VI(D) does state that charges by a doctor of dentistry for treatment or service are not covered unless specifically provided under the Major Medical Benefits portion of the Plan. We therefore must look to the Major Medical Benefits portion of the Plan where we find that the benefits provided by the Plan, as amended by the February 19, 1986 amendment, include both dental benefits and benefits for TMJS. The amendment adds coverage for TMJS but does not restrict the coverage to any particular treatment or services rendered by either a doctor of medicine, a doctor of dentistry, or a dental surgeon. The added benefits for TMJS are not restricted to any particular course of treatment other than as to the maximum cost for splinting or orthodontics. We agree with the trial court that when the Plan is read as a whole, there is an ambiguity in the covered benefits provided for the treatment of TMJS.
We therefore find that the trial judge was not manifestly in error or clearly wrong in finding that any treatment or services for TMJS is covered under the Plan for an amount up to $5,000.00 during a participant's lifetime regardless of what kind of treatment is administered or by whom it is administered, subject to the $500.00 limit on splinting, the $750.00 limit on orthodontics, which, if incurred, are counted toward the $5,000.00 lifetime maximum limit for TMJS.
However, even if, as defendant contends, these provisions of the Plan did apply where there was dental treatment, we do not find that plaintiff had just a dental problem and dental treatment. She suffered from severe headaches and her teeth were not capped for any dental reason. See, Landry v. Travelers Insurance Company, 488 So.2d 379 (La.App. 3 Cir.1986), writ den., 491 So.2d 23 (La.1986). The February 19, 1986 amendment to the Plan adding coverage for TMJS does not limit such coverage as a dental benefit. We need only refer to the amendment to see where *19 "Dental Benefits" coverage was changed under the covered benefits and to see where TMJS coverage was added as a covered benefit to reach this conclusion.
By defendant's own admission, the capping of plaintiff's teeth was not orthodontic. Defendant stated that it paid $750.00, the maximum permitted for orthodontics, because capping reached the same result as splinting. However, the evidence shows that capping will sometimes cure TMJS where orthodontics will not because the two can have different effects on the bite alignment. The capping of plaintiff's teeth is also not splinting. For these reasons, we conclude that plaintiff is covered under the Plan up to $5,000.00 for the cost of the capping of her teeth to cure her TMJS.

INTEREST ON AWARD OF COURT COSTS
Defendant contends that the trial judge erred when he added deposition costs and court reporters' fees to the amount of plaintiff's medical bills, subtracted the $750.00 previously paid by defendant, and then ordered judicial interest to run on the resulting total. The trial judge rendered a money judgment for the following items:

Medical Bills $4,015.00
Bill of Dr. David Carlton, Deposition 300.00
Court Reporter Fee of Dr. Carlton 38.35
Bill of Dr. Steve Brown, Deposition 150.00
Court Reporter Fee of Dr. Brown 50.00
 _________
 $4,553.35
 Less payment made by Wal-Mart − 750.00
 _________
 Total amount awarded $3,803.35

The trial court then signed a judgment for $3,803.35 together with legal interest on all sums from date of judicial demand, until paid. This judgment allows judicial interest to run on plaintiff's legal expenses taxed as court costs. The defendant contends that this is error. Defendant does not contest the trial court judgment ordering judicial interest to run on the amount of medical bills.
The issue of whether judicial interest can run on expenses assessed as items of court cost by the court is apparently res nova in Louisiana. LA.C.C.P. Art. 1920 gives courts authority to render judgment for costs.[1] La.C.C.P. Art. 1921 states that the court shall award interest in a judgment as prayed for or as provided by law.[2]
If assessment by the court of expenses as court cost is a money judgment under Art. 1921, interest is due. The First Circuit, Louisiana Court of Appeal, in Board of Trustees of the East Baton Rouge Mortgage Finance Authority v. All Taxpayers, 361 So.2d 292 (La.App. 1 Cir. 1978), held that:
"The award of court costs against the judgment debtor is a money judgment in favor of that party who incurred court costs in participating in the litigation.
Since Harris [defendant] expended court costs and was eventually successful, then the assessment of court costs against the plaintiff is in and of itself a money judgment against that plaintiff executable by Harris." Bd. of Trustees, Etc. v. All Taxpayers, 361 So.2d 292, at page 295 (La.App. 1 Cir.1978).
La.C.C. Art. 2924[3] permits legal interest for all sums which are the object of a *20 judicial demand. Plaintiff, in her petition, sought judgment for all court costs; thus, her claim for court costs is clearly an object of her judicial demand. We agree with the view expressed in Bd. of Trustees, Etc. v. All Taxpayers, supra, that an assessment of plaintiff's expenses as court cost is a money judgment against the defendant cast for the court cost. La.C.C.P. Art. 1921 makes no distinction between a judgment for expenses, incurred by a party and taxed as costs, and a judgment for other court costs. This court will not make such a distinction where the legislature has failed to do so. We hold that judicial interest can run on a judgment for court costs.
However, we hold that judicial interest on court cost is only due where the party awarded the cost has actually paid such cost.[4] See Watchtower Mut. Life Ins. Co. v. Davis, 99 S.W.2d 693 (Tex.App.1936). See also, C.J.S. Cost § 190. Here, plaintiff paid the cost for the depositions of Dr. Carlton and Dr. Brown, as well as the court reporters' fees for the taking of both depositions. Defendant, by judgment, was then taxed with those expenses as court costs which is mandated under La.R.S. 13:4533.[5] The right to collect the costs under the terms of the judgment belongs to the plaintiff, the party in whose favor it was rendered. Stewart v. Avery, 341 So.2d 590, 592 (La.App. 2 Cir.1977). From the date of rendition of the money judgment against defendant for plaintiff's expenses, the money was due the plaintiff, and the statutes as well as justice entitle the plaintiff to collect judicial interest on these sums at the legal rate from the date of judicial demand until it is paid. See generally, Los Angeles Rock & Gravel Co. v. City of Los Angeles, 132 Cal.App. 262, 22 P.2d 541 (1933), hearing denied, (Cal.1933); Dowdy v. Calvi, 14 Ariz. 148, 125 P. 873 (1912); Bates v. Wilson, 18 Colo. 287, 32 P. 615 (1893).
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to defendant-appellant, Wal-Mart Stores, Inc.
AFFIRMED.
NOTES
[1] La.C.C.P. Art. 1920 provides:

"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
[2] La.C.C.P. Art. 1921 provides:

"The court shall award interest in the judgment as prayed for or as provided by law."
[3] La.C.C. Art. 2924 states:

"A. Interest is either legal or conventional.
B. (1) Legal interest is fixed at the following rates, to wit:
(a) At the rate fixed in Subparagraph (3) of this Paragraph on all sums which are the object of a judicial demand, whence this is called judicial interest; and
(b) On sums discounted at banks at the rate established by their charters ..."
[4] When a party who is awarded costs has not actually paid such costs, whether they be costs under La.R.S. 13:4533 or court costs under La. R.S. 13:841 et seq., we do not believe judicial interest can be awarded on such costs just because the party who incurred the costs is still primarily liable to the Clerk of Court, Sheriff, expert witness, or court reporter. See Stewart v. Avery, infra; Eaves v. McLeod Bros. Contractors, Inc., 430 So.2d 337 (La.App. 3 Cir. 1983), writ den., 434 So.2d 1096 (La.1983). The effect of rendition of a money judgment as court cost for specific items paid by a party is to act as a reimbursement to that party, as the prevailing party, for his actual out of pocket cost expended, but without changing that party's liability as the party who incurred the cost. Stewart v. Avery, supra.
[5] La.R.S. 13:4533 provides that:

"The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs."