567 So.2d 687 (1990)
Dwight A. and Phyllis E. SAYES, Plaintiffs-Appellants,
v.
SAFECO INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
No. 89-349.
Court of Appeal of Louisiana, Third Circuit.
September 20, 1990.
*688 Rivers & Beck, Robert Beck, Alexandria, for plaintiffs-appellants.
Bodenheimer, Jones, Klotz & Simmons, Frank H. Thaxton, III, Shreveport, for defendant-appellee.
Before DOUCET, KNOLL and KING, JJ.
KING, Judge.
This case presents the issue of whether the trial court was correct in holding that defendant was not required, under its homeowner's insurance policy, to pay plaintiffs for the cost of repairs for a covered loss to their home until after plaintiffs had actually made the repairs.
On July 14, 1988, Dwight A. Sayes and Phyllis E. Sayes (hereinafter plaintiffs) filed suit against Safeco Insurance Company (hereinafter defendant) to collect the difference between the "actual cash value" and the "replacement value," under a homeowner's insurance policy issued to them by defendant, for damages sustained from a fire to their home. Plaintiffs filed a Motion for Summary Judgment attaching thereto a certified copy of the insurance policy and affidavits. Defendant filed a Motion for Declaratory Judgment seeking a ruling from the court that no further payments were due under its homeowner's policy of insurance until the damages to plaintiffs' dwelling had actually been repaired. The trial court denied plaintiffs' Motion for Summary Judgment and granted defendant's Motion for Declaratory Judgment. A formal written judgment was signed. Plaintiffs timely appeal. We reverse and render judgment.

FACTS
Plaintiffs purchased from defendant a homeowner's insurance policy (hereinafter the policy), which was issued on February 2, 1988, to insure a dwelling owned by plaintiffs. On March 7, 1988, plaintiffs' insured dwelling was severely damaged by fire, although not totally destroyed. On May 3, 1988, plaintiffs furnished a proof of loss to defendant in the amount of $37,888.61, the estimated cost of repairing the damage. The adequacy of the proof of loss and the estimated cost of repairing the damages is not disputed by defendant. Defendant made a timely payment to plaintiffs of $21,875.53, the depreciated or "actual cash value" of the damaged property. Defendant contended that, under the terms of the policy, the balance of the loss was not payable to plaintiff until the property was actually repaired. Plaintiffs then filed suit against defendant to collect the balance claimed in their proof of loss and also sought penalties and attorney's fees.
The trial court, in ruling on plaintiffs' Motion For Summary Judgment and defendant's Motion For Declaratory Judgment, agreed with defendant's interpretation of the policy and ruled that the policy did not require defendant to pay the replacement cost of the dwelling until such time as the plaintiffs had actually completed the repair of the damages to the dwelling. The trial court further required defendant to pay plaintiffs a fair rental value for comparable housing for a period not to exceed six months after payment of the actual cash value.
From this ruling, plaintiffs appeal asserting that (1) defendant's policy, if it does not require payment until after repair, violates La.R.S. 22:695 (repealed July 27, 1988), (2) that the trial court erred in finding that the policy did not require payment for the estimated cost of repairs before the repairs were actually made, and (3) that the trial court erred in not finding them entitled to penalties and attorney's fees. The trial court ruling with respect to the rental payment is not specified as error and, therefore, is a final judgment since defendants did not appeal or answer the appeal.

LAW
The "General Conditions" section of the policy contains the following language:

*689 "5. Loss Settlement. Covered property losses are settled as follows:
* * * * * *
c. Buildings under Coverage A or B at replacement cost without deduction for depreciation subject to the following:
* * * * * *
(2) When the cost to repair or replace the damage is more than $2500, we will pay the difference between actual cash value and replacement cost only after the damaged or destroyed property has actually been repaired or replaced."
However, the policy also contains an "Option AHome Replacement Guarantee," purchased by plaintiffs, which contains the following language:
"For additional premium, Item 5c under General Conditions shall not apply to Coverage ADwelling. In its place, the following shall apply:
We will settle covered losses to the dwelling under Coverage A without regard to the limit of liability shown in the Declarations.
You agree to:
1. insure the dwelling to 100% of its replacement cost as determined by us.
2. accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area.
3. notify us of any addition or other remodeling which increases the replacement cost of the dwelling $5,000 or more:
a. within 90 days of the start of construction; or
b. before the end of the current policy period;
whichever is greater, and pay any resulting additional premium; and
4. repair or replace the damaged dwelling.
If you fail to comply with any of the above provisions, item 5.c. under General Conditions shall apply to Coverage A-Dwelling."
Plaintiffs contend that under "Option A", they are not required to actually repair the damaged dwelling before payment of the estimated repair cost is due but are only required to agree to make such repairs. Defendant, on the other hand, while not disputing that the repair cost is owed, argues that such repair cost is not due under the policy until after plaintiffs have actually repaired the dwelling. Interpretation of a contract is the determination of the common intent of the parties; however, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. Arts. 2045 and 2046. Louisiana law is clear that any ambiguities in a contract are to be construed against the drafter of a contract. Cotton v. Wal-Mart Stores, Inc., 552 So.2d 14, at page 18 (La.App. 3 Cir.1989). It is undisputed that defendant drafted the policy.
If we accept defendant's interpretation of the policy, because plaintiffs have not yet repaired the damaged dwelling as they agreed to do under "Option A", they have not complied with "Option A" and Section 5(c)(2) of the General Conditions then apply and, therefore, payment is not due until after the actual repairs are made. Defendant's reasoning is circular and, under their interpretation of the policy, both the "General Conditions" and "Option A" would require that actual repair of damages be made before payment is due for a covered loss.
We think, at a minimum, the insurance policy is ambiguous. "Option A" applies if plaintiffs "... agree to ... repair or replace the damaged dwelling." "Option A" does not say that it will only apply, if plaintiffs actually make repairs to the damaged dwelling, before payment of repair costs will be due. If this is what defendant intended, it could have used the same unambiguous language it used in Section 5(c)(2) of the General Conditions of the policy. Plaintiffs have "agreed to ... repair or replace the damaged dwelling" as required by "Option A" of the policy and submitted a proof of loss for the estimated cost of such repairs.
We agree with defendant's statement in its brief to this Court, that "[t]he obligation *690 of payment by the insurer is reciprocal to the obligation of repair by the insured" under the terms of the policy. The plaintiffs do have an obligation to repair; however, because the policy is silent and ambiguous as to whether, under "Option A" of the policy, if plaintiffs agree to make the repairs, the repairs must actually be made prior to payment being due or whether the repairs can be made subsequent to payment, the policy must be interpreted against its drafter, the defendant. The trial court was manifestly in error and clearly wrong in holding otherwise.
Because we find, under the terms of the insurance contract, that plaintiffs are entitled to payment of replacement cost before actual repairs are made, we will forego a discussion of whether La.R.S. 22:695 (repealed July 27, 1988) might have applied to the policy, since it is unnecessary to the resolution of this appeal.
Lastly, plaintiffs claim that they are entitled to penalties and attorney's fees under La.R.S. 22:658. A bona fide dispute existed between the parties of this action. Defendant paid the actual cash value and did not claim that replacement value was not owed, but only that it was not owed until after actual repair was made. Though we do not agree with defendant's position, defendant's argument is reasonable and was made in good faith. Defendant's actions were not arbitrary or capricious; therefore, plaintiffs are not entitled to penalties and attorney's fees. See, Graham v. Equity Nat. Life Ins. Co., 373 So.2d 988 (La.App. 3 Cir.1979), writ den., 376 So.2d 319 (La.1979).
For the foregoing reasons, the judgment of the trial court is reversed insofar as it held that defendant was not required to pay replacement cost before actual repair or replacement was made, and defendant-appellee is ordered to pay plaintiffs-appellants $16,013.08, for the repair of the damaged dwelling, together with judicial interest from date of judicial demand, until paid. Plaintiffs-appellees' claim for penalties and attorney's fees is denied. In all other respects the judgment of the trial court is affirmed. All cost of the trial and appellate courts are taxed to defendant-appellee.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.