583 So.2d 1148 (1991)
Mary BANKSTON, Plaintiff-Appellant,
v.
ALEXANDRIA NEUROSURGICAL CLINIC, Briarwood Hospital, Dr. C. Babson Fresh, Dr. John M. Patton, Dr. Charles Roberts, Louisiana Health Service & Indemnity Company, Dr. Frank Covington, Dr. James B. Quillin, Defendants-Appellees.
No. 90-97.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1991.
Rehearing Denied August 9, 1991.
*1150 Mary Bankston, in pro. per.
Provosty, Sadler & deLaunay, David Sobel, Alexandria, for Drs. Fresh and Patton.
Gist, Methvin, Hughes & Munsterman, Charles LaCroix, Alexandria, for Alexandria Neurosurgical Clinic.
Juneau, Judice, Hill & Adley, Marc W. Judice, LaFayette, for Dr. Quillin.
Wilson & Walker, Lon Wilson, Alexandria, for Blue Cross.
Brook, Morial, Cassibry, Fraiche & Pizza, David Kavanaugh, J. Robert Wooley, New Orleans, for Dr. Covington.
Before DOMENGEAUX, C.J., and FORET and DOUCET, JJ.
DOMENGEAUX, Chief Judge.
Mary Bankston, the plaintiff in this medical malpractice action, appeals several motions and exceptions granted in favor of various defendants.
Three appeals have been docketed and consolidated in this court. Although we will address all issues in one opinion, we will render a separate decree for each docket number. See Bankston v. Alexandria Neurosurgical Clinic, nos. 90-225 and 90-381, rendered this same date at 583 So.2d 1156 (La.App. 3d Cir.1991), and 583 So.2d 1156 (La.App. 3d Cir.1991).
On December 1, 1988, Mary Bankston filed civil action no. 152,615 in the district court for Rapides Parish against several health care providers for alleged acts of medical malpractice. This civil action was commenced after a medical review panel, convened pursuant to La.R.S. 40:1299.47, failed to render a written opinion within a court ordered extension of time. Pursuant to La.R.S. 40:1299.47B(1)(b), the panel was dissolved without the necessity of obtaining a court order.
Named as defendants are (1) Dr. C. Babson Fresh, who performed back surgery on the plaintiff in November of 1985; (2) Dr. John M. Patton, who assisted in the surgery; (3) Dr. Charles Roberts, who examined the plaintiff two weeks after her surgery in a hospital emergency room; (4) Blue Cross/Blue Shield, d/b/a Louisiana Health Service & Indemnity Company, which issued a health insurance policy to the plaintiff; (5) Briarwood Hospital, a psychiatric facility where Mrs. Bankston was a patient in November of 1985; (6) Dr. Frank Covington, a psychiatrist who treated the plaintiff while she was at Briarwood; and (7) Dr. James B. Quillin, a psychologist who evaluated the plaintiff at Dr. Covington's request.
The many judgments at issue will be discussed, whenever possible, in chronological order of the date of signing.

1. Judgments of January 25, 1989, March 20, 1989, April 4, 1989, and May 8, 1989.

On January 25, 1989, the trial court signed a judgment granting Dr. Fresh and Dr. Patton's motion to strike specific dollar demands for damages from the plaintiff's initial petition. On March 20, 1989, the trial court signed a judgment granting a similar motion to strike and an exception of vagueness filed by Briarwood Hospital. On April 4, 1989, the trial court signed a judgment granting in part a motion to strike filed by Briarwood, but denying its request for sanctions. However, Briarwood applied for a new trial, and on May 8, 1989, the trial court signed a judgment granting all relief requested on the motion to strike and further imposing sanctions of $500.00 on Mrs. Bankston for failing to investigate certain allegations in her *1151 amended petition. These interlocutory rulings have already been reviewed by this court and the Louisiana Supreme Court. We therefore decline to review these judgments a second time. See W89-204, writ denied, 546 So.2d 171 (La.1989); W89-312, writ denied, 546 So.2d 181 (La.1989); and W89-1347, writ denied, 561 So.2d 100 (La. 1990).

2. Exception of lack of personal jurisdiction filed by Dr. Frank Covington.

Dr. Frank Covington filed a declinatory exception contending the trial court lacked personal jurisdiction over him because he has never been served with process. The record reveals that Dr. Covington was served through John Scott, who was neither Dr. Covington's agent for service of process nor his attorney of record in this proceeding. The trial court signed the judgment granting Dr. Covington's exception and dismissing plaintiff's suit against him without prejudice on February 14, 1989.
Upon plaintiff's application, we considered the correctness of this judgment in W89-204, even though the ruling is an appealable judgment. We found no error in the trial court's action, and the Supreme Court denied writs at 546 So.2d 171 (La. 1989). We therefore decline to re-address the plaintiff's opposition to this ruling.

3. Exceptions of res judicata and no cause of action filed by Louisiana Health Service & Indemnity Company.

On October 27, 1986, Mrs. Bankston filed a "suit for nonpayment of medical bills" against Louisiana Health Service & Indemnity Company in Pineville City Court. She obtained a judgment of $890.25, and the suit was dismissed with prejudice, discharging the defendant "from any further liability to the plaintiff whatsoever."
In the instant suit, the plaintiff has also named Louisiana Health Service as a defendant, seeking additional damages resulting from the defendant's denial of coverage. Louisiana Health Service responded to the plaintiff's petition by filing exceptions of res judicata and no cause of action, both of which were granted by the trial court in a written judgment signed on April 17, 1989.
At the time plaintiff filed this suit, La. R.S. 13:4231 set forth the elements of res judicata as follows:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Res judicata under Louisiana law, as it existed prior to the 1990 legislative amendments to La.R.S. 13:4231, was perceived as much more narrow in scope than its common law counterpart. Prior Louisiana legislative authority for res judicata established a presumption of correctness and precluded relitigation of the object of the judgment only when there was (1) an identity of the parties, (2) an identity of cause, and (3) an identity of the thing demanded. Bowman v. Weill Construction Co., 502 So.2d 133 (La.App. 3d Cir.1987), writ denied, 503 So.2d 495 (La.1987).
To the extent that the plaintiff is seeking to recover any unpaid medical expenses, the instant action and the prior suit in Pineville City Court contain an identity of cause, parties and thing demanded. Under Louisiana's former construction of res judicata, an argument could be raised that plaintiff's demand for nonpecuniary damages herein was not the "object" of the judgment in the earlier suit. However, Louisiana jurisprudence has established that nonpecuniary damages are not recoverable for breach of an insurance contract. See Tano Corporation v. Louisiana Health Service & Indemnity Co., 355 So.2d 604 (La.App. 4th Cir.1978) and Nelson v. Allstate Insurance Co., 464 So.2d 1015 (La.App. 1st Cir.1985). We find no error in the trial court's granting of Louisiana Health Service's exceptions of res judicata and no cause of action.

*1152 4. Exception of res judicata filed by Dr. Charles Roberts.

Mrs. Bankston filed medical malpractice claim no. 89-1168 with the Commissioner of Insurance on December 6, 1986. On December 15, 1987, Mrs. Bankston amended her claim to add as defendant, Dr. Charles Roberts, an emergency room physician who examined her on one occasion only, November 17, 1985.
Pursuant to La.R.S. 40:1299.47 B(2)(a), Dr. Roberts filed an exception of prescription which was lodged as suit no. 149,016, "Mary Bankston v. Dr. Charles W. Roberts, M.D." in district court for the Parish of Rapides. Dr. Roberts' exception of prescription was granted on May 1, 1988, and plaintiff's medical review proceeding against him was dismissed with prejudice. The ruling of the trial court in suit no. 149,016 was affirmed by this court in our docket no. 89-678. The Louisiana Supreme Court subsequently denied writs.
On December 1, 1988, after the medical review panel failed to render a timely opinion, the plaintiff filed this suit, no. 152,617, in Rapides Parish District Court, with Dr. Roberts still named as a defendant. Dr. Roberts then filed an exception of res judicata in the 152,617 civil action.
At the time of the hearing on the exception of res judicata, the judgment in suit no. 149,016 was still on appeal. In a minute entry dated March 17, 1989, the trial judge stated he construed the exception of res judicata to be one of lis pendens, and he ordered Dr. Roberts' dismissal from the suit. However, the written judgment signed on May 19, 1989 sustained an "Exception of Res Judicata."
The requirements for lis pendens are set forth in Fincher v. Insurance Corp. of America, 521 So.2d 488 (La.App. 4th Cir. 1988), writ denied, 522 So.2d 570 (La.1988):
The test for deciding if an exception of lis pendens should be granted is to inquire whether a final judgment in the first suit would be res judicata in the latter. Houston v. Avondale's Shipyards, Inc., 464 So.2d 45 (La.App. 4th Cir.1985). The exception of lis pendens has the same requirements of identities as the exception of res judicata. Slater v. Slater, 336 So.2d 965 (La.App. 4th Cir.1976); see also: R.S. 13:4231. Both exceptions serve to promote judicial economy and to prevent harassment. The exception of lis pendens, however, is applicable before judgment on the merits is rendered in any of the pending suits, while the exception of res judicata is applicable only after judgment.
521 So.2d at 489.
Civil suits nos. 149,016 and 152,617 involve the same allegations of negligence by Mrs. Bankston against Dr. Roberts. Although Dr. Roberts initiated suit no. 149,016, he did so in his capacity as a defendant in Mrs. Bankston's medical review proceeding. The judgment sustaining his exception of prescription dismissed Dr. Roberts from the medical review proceeding and would be res judicata as to any subsequent proceeding brought by Mrs. Bankston on the same cause of action. Because the judgment in suit no. 149,016 was on appeal at the time the exception was argued in suit no. 152,617, we find the trial court properly construed Dr. Roberts' exception as one of lis pendens.
The minute entry of March 17, 1989 clearly establishes that the trial court sustained an exception of lis pendens, although the judgment signed on May 19, 1989 was styled as an exception of res judicata. An appellate court has the power to correct certain obvious errors not called to the attention of the trial judge. La. C.C.P. art. 1951, comment (b). We will, therefore, affirm the judgment of the trial court, but amend it to sustain an exception of lis pendens.

5. Motion for summary judgment filed by Dr. James B. Quillin.

Mrs. Bankston was admitted to Briarwood Hospital on November 17, 1985. In the course of his treatment of Mrs. Bankston, Dr. Frank Covington, a psychiatrist, requested a consultation from Dr. James B. Quillin, a psychologist.
In her petition, Mrs. Bankston makes the following allegations against Briarwood, *1153 Dr. Quillin, Dr. Covington and Louisiana Health Service & Indemnity Company:
(A) Inadequately and negligently care; (B) Abuse in making Mary Bankston stay out of bed; (C) Liable in writing; (D) Slander in telling Mary Bankston that she did not have insurance, etc.; (E) Abandonment; (F) Refusing Mary Bankston adequate medical assistance; (G) Substandard care in the treatment of Mary Bankston; (H) Other acts or omissions constitution negligence or fault which will be shown at the trial of this matter; (I) Failure to fully review and determine the medical history and current physical condition of Mary Bankston; (J) Administration of inappropriate medication under the circumstances prevailing; (L) Failure to adhere to the accepted standards of medical practices and their specialties; (M) Failure to furnish patient with appropriate diligent and skillful care treatment; (N) Negligent transport of Mary Bankston; (O) Acts and omissions of negligence which will be shown upon trial of this matter.
On October 27, 1989, Dr. Quillin moved for summary judgment, seeking dismissal of Mrs. Bankston's claim against him. In support of his motion, Dr. Quillin submitted an affidavit, a copy of Mrs. Bankston's admission orders at Briarwood, and his deposition, which was taken in the medical review proceeding. The transcript of the hearing held on Dr. Quillin's motion, on December 11, 1989, is not in the record.
Pursuant to Dr. Covington's request, Dr. Quillin administered several psychological tests to Mrs. Bankston to ascertain certain personality factors. The printed forms filled out by Mrs. Bankston were taken from Briarwood Hospital to Dr. Quillin's office where he prepared his final report. Although Dr. Quillin admits he cannot locate this raw data, his final evaluation is in the record. There is no evidence, nor does plaintiff allege, that she was discharged or mistreated because of the information contained in Dr. Quillin's evaluation.
Dr. Quillin is a licensed psychologist who administered a one-time psychological evaluation to Mrs. Bankston. He did not perform any of the alleged acts of negligent medical care, such as prescribing medication or ascertaining Mrs. Bankston's physical condition. Dr. Quillin is not an employee of Briarwood Hospital. We find no evidence in the record that suggests he was involved in the decision to discharge Mrs. Bankston or to transport her to another hospital.
We are cognizant of the strenuous burden of proof placed upon the mover in a motion for summary judgment. However, given Dr. Quillin's limited role in the care received by Mrs. Bankston at Briarwood, we cannot say the trial court erred in granting summary judgment in his favor.

6. Remaining judgments and filings.

On November 6, 1989, the trial court heard arguments on a motion for protective orders, motion to quash depositions, motion to compel and a motion to nullify all previous judgments, filed by Mrs. Bankston, and motions for sanctions filed by various other parties. All motions and rules at this hearing were subsequently denied by the trial court. A written judgment was signed on December 22, 1989.
On December 11, 1989, in addition to Dr. Quillin's motion for summary judgment, the court also heard arguments regarding a petition for mandamus and a motion to quash depositions filed by Mrs. Bankston, as well as motions for sanctions. The trial court granted Dr. Quillin's motion for summary judgment, but denied all other motions.
In W89-1347 and W90-88, we found no clear error in the trial court's denial of Mrs. Bankston's motion for protective orders, motion to quash depositions and motion to compel. Writs were denied at 561 So.2d 100 (La.1990).
In Mrs. Bankston's writ application, we declined to consider the denial of her motion to nullify all judgments, finding it to be an appealable judgment. Upon review of the record, we find no error. Mrs. Bankston contends the district court and this court do not have jurisdiction over her medical malpractice claim because the *1154 medical review panel has not rendered a formal opinion. Her petition for mandamus is based upon this argument, as is her exceptions of no cause of action and lack of jurisdiction which were filed in this court. Mrs. Bankston's position is not supported by law.
Mrs. Bankston filed a medical malpractice proceeding with the Commissioner of Insurance. When the medical review panel failed to render an opinion within twelve months of the selection of its attorney chairman, Mrs. Bankston petitioned the district court for an extension of time for the panel to render an opinion. The panel apparently met, but did not issue a written opinion with the required attached oaths of the panel members within that extension of time. Pursuant to La.R.S. 40:1299.47 B(1)(b), the medical review panel was then dissolved without the necessity of obtaining a court order of dissolution. Upon dissolution of the panel, there was no longer a procedural bar preventing Mrs. Bankston from filing suit in district court. Indeed, it was incumbent upon Mrs. Bankston to take such action to preserve her rights against the defendants because dissolution of the panel after the court ordered extension of time affected the suspension of prescription with respect to the defendants. La.R.S. 40:1299.47 B(3). The trial court did not err in denying Mrs. Bankston's motion to annul all judgments and her petition for mandamus. Mrs. Bankston's exception of lack of jurisdiction and no cause of action filed in this court are denied.

7. Sanctions and frivolous appeal.

Defendants, Dr. Fresh, Dr. Patton and Briarwood Hospital, have answered appeal no. 90-225, seeking reversal of the trial court's failure to impose sanctions on Mrs. Bankston under La.C.C.P. art. 863 and further asking this court to award damages for frivolous appeal under La.C.C.P. art. 2164.
In paragraph two of plaintiff's second amended petition, Mrs. Bankston alleged that the defendants destroyed certain medical records, specifically her MMPI, MCMI, Rorshach test results, "with conspiracy to deny plaintiff due course of justice." Briarwood Hospital filed a motion to strike this allegation and sought sanctions against Mrs. Bankston for the filing of this pleading. After a hearing on March 20, 1989, the trial court ordered this allegation stricken from plaintiff's petition and further imposed article 863 sanctions on the plaintiff for making this allegation because the information available to her established that Briarwood Hospital was never in possession of these records.
On October 13, 1989, Mrs. Bankston filed a pleading entitled "Motion and Order to Compel Qualified Providers to Comply With the Medical Malpractice Act and Provisions." Among the many demands contained in this pleading was a request that Briarwood be ordered to produce the MMPI, MCMI and Rorshach tests administered by Dr. Quillin. Although the trial court denied this demand, it refused to impose sanctions for the filing of this pleading as requested by defendants.
La.C.C.P. art. 863 provides in part:
Art. 863. Signing of pleadings, effect
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.

*1155 D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
This article requires the attorney or litigant who signs a pleadings to make an objectively reasonable inquiry into the facts and the law. Subjective good faith does not satisfy the duty of reasonable inquiry. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2d Cir. 1990).
After reviewing the record, we agree with Briarwood that the trial court erred in refusing to impose sanctions on Mrs. Bankston for the filing of the "Motion to Compel ...," insofar as that pleading concerns the requested psychological tests. In spite of being sanctioned in the past on this very demand, Mrs. Bankston once again ruled Briarwood into court to defend allegations which the trial court had previously determined to be unfounded. At the hearing on November 6, 1989, Mrs. Bankston offered no new evidence to support her contention that Briarwood was in possession of these records.
Paragraph D of article 863 authorizes the court to impose "an appropriate sanction" which may include an order to pay the other party the amount of reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. We have no evidence as to the expense incurred by Briarwood in response to this pleading, but we will order the plaintiff to pay reasonable attorney's fees to Briarwood in the amount of $1,000.00. We find no error in the trial court's failure to award sanctions in favor of the other defendants.
We also find the three defendants who answered this appeal are entitled to damages for frivolous appeal. Of the nine judgments forming these three appeals, only three were final judgments that had not been previously reviewed by this court. The remaining judgments were interlocutory rulings which we had considered in the plaintiff's many writ applications and one final judgment which we elected to consider upon plaintiff's application. The defendants have, no doubt, incurred considerable costs as the result of plaintiff's attempts to relitigate her prior unsuccessful claims. Furthermore, the record is in a state of confusion, with repetitive pleadings and briefs. Yet, the plaintiff failed to appear at oral argument, thereby foregoing an opportunity to bring some clarity to these proceedings. Under these circumstances, we will award $2,000.00 for frivolous appeal to each of the three defendants who filed answers in this appeal.

DECREE
For the above and foregoing reasons, the judgments rendered in docket no. 90-97 are affirmed, with the exception of the judgment dismissing Dr. Charles Roberts, which is affirmed as amended. The judgment rendered in docket no. 90-225 is affirmed in part and reversed in part, and judgment is hereby rendered in favor of Briarwood Hospital in the amount of $1,000.00 in sanctions, with legal interest from December 22, 1989, and $2,000.00 for frivolous appeal; in favor of Dr. Babson Fresh in the amount of $2,000.00 for frivolous appeal; and in favor of Dr. John Patton in the amount of $2,000.00 for frivolous appeal. Legal interest on all awards for frivolous appeal shall accrue from date of this judgment. The judgment rendered in appeal no. 90-381 is affirmed. Costs of these three appeals are assessed against plaintiff-appellant, Mary Bankston.
Docket No. 90-97 is AFFIRMED AS AMENDED; Docket No. 90-225 is AFFIRMED IN PART, REVERSED IN PART AND RENDERED; Docket No. 90-381 is AFFIRMED.