600 So.2d 823 (1992)
Jeff MURPHY, Plaintiff-Appellee,
v.
BOEING PETROLEUM SERVICES, INC., et al., Defendants-Appellants.
No. 90-1092.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*825 John F. Derosier, Lake Charles, for plaintiff-appellee.
Gray Law Firm, Anna Gray, Lake Charles, for defendant-appellant, Boeing.
Juneau, Judice, Hill & Adley, Patrick A. Juneau, Lafayette, for defendant-appellant, McHale, Bufkin.
John Pucheu, Eunice, for defendant-appellant, Jones.
Before GUIDRY and STOKER, JJ., and PATIN[*], J. Pro Tem.
STOKER, Judge.
This is an appeal by Boeing Petroleum Services, Inc. from a judgment denying its motion to have an award for sanctions and attorney fees assessed against plaintiff, Jeff Murphy, his attorney, David Jones, and the other members of the law firm with which Jones was associated, McHale, Bufkin and Dees, APLC. Boeing also appeals the award of costs in its favor, contending it is inadequate and that judicial interest should run on the award of costs. We affirm and amend.
Jeff Murphy was the sole party plaintiff in this action, an action for damages to land. Boeing Petroleum Services, Inc. (Boeing) obtained a judgment of dismissal of Murphy's damage suit through a motion for summary judgment. The trial court cast Murphy for the costs of the suit. The motion for summary judgment against Murphy is not involved in this appeal. The issues in the appeal arose after the trial court granted the motion for summary judgment against Murphy. The issues before us, as stated above, relate to Boeing's attempt to have sanctions imposed against Murphy and his attorneys and to have the amount of the award of costs increased and have the court award judicial interest on the costs awarded.
The principal issue in this case is whether the plaintiff, Murphy, and the attorneys were guilty of bad faith and fraud so as to justify the imposition of sanctions under LSA-C.C.P. arts. 863 and 1420.

FACTS
On July 7, 1986, a crude oil spill occurred at the Department of Energy's Strategic Petroleum Reserve Site at West Hackberry, La. Boeing was the management and operations contractor for the Department of Energy at that site. The spill damaged the land and lake (Black Lake) at the site.
As a result of the accident, Jeff C. Murphy filed a suit for damages on July 7, 1987, against Boeing and others, alleging permanent damage to property of which he was the sublessee and purported assignee. Murphy had a hunting lease near the site. Amoco Production Co. was the owner and lessor of land near the site. Jarrett Derouen was also a sublessee of land near the site. Amoco and Derouen allegedly assigned to Murphy their causes and rights of action to recover damages from Boeing. Apparently an Amoco representative and a lessee made oral assignments to Murphy, but a written assignment was also purportedly executed. That written assignment is the basis of this litigation. The signatures of two parties, either Amoco representatives or lessees, William P. Hardeman and Issac A. White, were forged onto a written assignment, a copy of which was introduced into the record. The assignment was also signed by Jeff Murphy and was *826 notarized by David Jones. The assignment introduced into the record is allegedly not the original assignment. The original assignment was missing and never found.
David Jones, the Notary, admitted that Hardeman and White had not signed the assignment in his presence. Hardeman, the area fee lands manager for Amoco, testified that he had intended to and did sign an assignment of rights which was brought to him by Jeff Murphy, but that the signature on the copy shown him was not his. Hardeman executed the assignment because Amoco did not want to be involved in a suit against the government, but the marsh had been damaged and Murphy had a good reputation for working with the marsh. Boeing had already employed Murphy to do some clean up work in the marsh. White, one of Amoco's lessees of land near the site, testified that he signed an assignment of rights which was brought to him by Murphy, but that the copy shown him was not what he signed and did not bear his own signature. White subleased land to Derouen and to Murphy. Finally, Derouen testified that he, too, signed an assignment of rights for Murphy.
Boeing requested a copy of the assignment as part of a lengthy discovery request on February 5, 1988. Murphy failed to comply with this part of the discovery until ordered to do so in August 1988. Boeing eventually realized that the assignment provided to them was not a copy of the original assignment and that some of the signatures on it were forged. Realizing that it could become involved in the litigation, Amoco refused to ratify the assignment.
On January 20, 1989, Boeing filed a motion for summary judgment in its favor, which was granted. Boeing then filed a motion for sanctions, attorney fees and costs to be assessed against Murphy, Jones, and the law firm of McHale, Bufkin and Dees, APLC, alleging bad faith and fraud in initiating and pursuing the litigation. Boeing claimed $37,154.69 in pretrial costs and $58,729.96 in pretrial attorney fees, or $95,884.65 total. The trial judge denied the motion for sanctions and attorney fees but granted the motion for recovery of costs up to $10,352.31 against the losing party, Jeff Murphy. The recovered expenses were those stipulated to by all parties.

SANCTIONS
Defendant contends on appeal that the trial judge abused his discretion in failing to levy sanctions under LSA-C.C.P. art. 863 and art. 1420 against Murphy, Jones, McHale, Bufkin and Dees. We disagree.
Article 863 applies to the certification of pleadings, motions and other papers, while Article 1420 applies to the certification of discovery requests, answers and objections. Both Article 863 and Article 1420 impose upon attorneys and litigants affirmative duties as of the date a document is certified. The obligation imposed upon litigants and their counsel who signed a document is to make an objectively reasonable inquiry into the facts and law. Subjective good faith will not satisfy the duty of reasonable inquiry. Bankston v. Alexandria Neurosurgical Clinic, 583 So.2d 1148 (La.App. 3d Cir.), writ denied, 583 So.2d 1156 (La.1991); Barry W. Miller, APLC v. Poirier, 580 So.2d 558 (La.App. 1st Cir.1991); Fairchild v. Fairchild, 580 So.2d 513 (La.App. 4th Cir.1991); Loyola v. A Touch of Class Trans. Serv., Inc., 580 So.2d 506 (La.App. 4th Cir.1991); Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2d Cir.1990).
The district court must determine if the individual who has certified the document purported to be violative has complied with those affirmative duties. In determining a violation, the trial court should avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the document was signed.
The standard of review by the appellate court is the "abuse of discretion", "manifestly erroneous" or "clearly wrong" criteria used in reviewing a trial court's factual findings. See Barry v. Miller, APLC, supra; Fairchild, supra; Loyola, *827 supra; Diesel Driving Academy, Inc., supra.
Articles 863 and 1420 are intended only for exceptional circumstances and are not to be used simply because parties disagree as to the correct resolution of a legal matter. Also, nothing in Articles 863 and 1420 empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief is subsequently found to be unjustified. Failure to prevail does not trigger a sanction award. The slightest justification for the exercise of a legal right precludes sanctions. Fairchild, supra; Loyola, supra; Diesel Driving Academy, Inc., supra.
Article 863 and Article 1420 require an attorney to sign a document in his "individual name". Sanctions may be imposed on "the person who made the certification". A personal, nondelegable duty is imposed on the signing attorney to satisfy himself, by application of his own judgment, that the pleading is factually and legally responsible. Because the duty belongs to the individual attorney, only he, and not his law firm, may be sanctioned for violating the duty. Diesel Driving Academy, Inc., supra, and cases cited therein.
In the case before us, Boeing seeks the imposition of sanctions against Jones and the other members of the firm with which Jones was associated. However, Jones was the only "certifying attorney" in this case. Therefore, as a matter law, Boeing is not entitled to have sanctions imposed on McHale, Bufkin and Dees, and the trial judge was entirely correct in refusing to do so.
Jones and Murphy were sanctionable as the certifying attorney and the litigant. The trial judge found, as a factual matter, that Jones and Murphy were not in bad faith and did not intend to commit fraud by filing the petition, or by filing any of the following: the brief in opposition to the motion for summary judgment[1], the supplemental response to answers for interrogatories (dated January 25, 1989), or the motion for a continuance (dated February 8, 1989). Under the appellate standard of review set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), we find no manifest error in the trial court's findings of fact, which are set forth in written reasons for judgment and attached hereto, under the circumstances and evidence presented in this case. Since Hardeman, White and Derouen admitted that they signed an assignment of rights for Murphy (the missing original assignment), there is no clear evidence of bad faith or fraudulent intent on the parts of Murphy and Jones. Under the evidence, they apparently had valid reasons to believe that the assignment would at least be ratified and that it was in accordance with the expressed intent of the assignors, Amoco and Derouen. Therefore, the judgment of the trial court refusing to impose sanctions and attorney fees on Jones and Murphy is affirmed.[2]

COSTS
Next, Boeing argues on appeal that the trial judge erred in failing to award the full *828 amounts expended by it on costs, expenses and expert witnesses.
LSA-C.C.P. art. 1920 clearly states that the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. LSA-R.S. 13:3666 applies to compensation of expert witnesses who testified at trial. LSA-R.S. 13:4533 describes the expenses which can be taxed as costs.
Under LSA-R.S. 13:3666, R.S. 13:4533 and C.C.P. art. 1920, the trial judge has great discretion in awarding costs (including expert witness fees, deposition costs, exhibit costs and related expenses). Larkins v. Cage Contractors, Inc., 580 So.2d 1068 (La.App. 4th Cir.1991); Veuleman v. Sims, 382 So.2d 245 (La.App. 3d Cir.1980). The trial judge is not required to set an expert witness fee at the amount charged by the expert witness. Fogg v. Lott, 444 So.2d 177 (La.App. 1st Cir.1983); Veuleman, supra.
In the case before us, the trial judge made a specific finding that most of the expert witness and deposition expenses were incurred in connection with Boeing's attempts to repair the damage caused to the land. The trial judge concluded that such expenses should be considered as efforts to mitigate damages rather than as merely trial preparation.
We note, also, that the case did not proceed to trial. Although it was dismissed on motion for summary judgment only five days prior to trial, Boeing was spared the considerable expense of trial.
In addition, Boeing complains of plaintiff's failure to timely respond to Boeing's discovery requests which allegedly required Boeing to incur, in the meantime, considerable expense for pretrial preparation. Apparently, Boeing's position is that so much expense would not have been incurred had they been aware earlier of the problems with the assignment. However, the timing of the pretrial procedure does not support their complaints. Plaintiff's petition was filed on July 2, 1987. Boeing's first discovery requests (which included the request for the assignment) were filed February 5, 1988. Although Boeing was entitled to file a motion to compel discovery after plaintiff failed to respond to Boeing's discovery requests with fifteen days, Boeing did not do so until almost six months later, on August 17, 1988. Plaintiff complied timely with the order compelling a response to discovery. Boeing's motion for summary judgment followed five months later, on January 20, 1989. Considering the timing of Boeing's pleadings, motions and discovery requests, it is apparent that Boeing and its counsel were themselves to some extent responsible for the fact that the litigation was dragged out and so much pretrial preparation and expense was incurred.
Therefore, we do not find a clear abuse of the trial judge's great discretion in the assessment of costs.

INTEREST
Finally, Boeing contends the trial judge erred in failing to award interest on the judgment for costs. The trial judge awarded $10,352.31 as costs. There is evidence in the record of payment of this amount of costs by Boeing. This court has previously held that judicial interest is due from the date of judicial demand on court costs where the party awarded the costs has actually paid such costs. Greene v. Gulf Coast Bank, 580 So.2d 712 (La.App. 3d Cir.), writ granted, 585 So.2d 554 (La. 1991); Cotton v. Wal-Mart Stores, Inc., 552 So.2d 14 (La.App. 3d Cir.1989). Therefore, we hold that Boeing is entitled to judicial interest on the costs awarded from date of judicial demand.

CONCLUSION
For the reasons given, the judgment of the trial court is amended to award judicial interests on the award of costs in favor of Boeing. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, Boeing.
AFFIRMED AS AMENDED.
NOTES
[*] Honorable John A. Patin participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Actually, a brief is not a pleading. LSA-C.C.P. art. 852; Williamson v. CIGNA/Insurance Co. of N. Am., 576 So.2d 1185 (La.App. 3d Cir.1991).
[2] At oral argument plaintiff's counsel furnished the court with certain documents purporting to show that attorney David C. Jones has been the subject of disciplinary action through proceedings before the Disciplinary Board of the Louisiana State Bar Association, Proceeding No. 90-PDB-005. The proceedings include a petition for consent discipline, purportedly signed by Jones, in which he admits committing forgeries discussed in this opinion. The petition was granted by the Louisiana Supreme Court on January 31, 1991. Jones allegations set forth in this petition do not change his position that his client had a cause of action based on the alleged assignment which could not be located. While the act of forging signatures was improper, commission of the forgeries does not show that Jones or his client believed the client, Jeff Murphy, did not have a cause of action. Our appreciation of the matter is that they believed Murphy did have a cause of action, and continued to believe he did. They simply were unable to produce the original assignments in order to make proof. Consequently, even if we were authorized to take judicial notice of the proceedings, it would not alter our decision to deny attorney fees to defendant as a sanction under LSA-C.C.P. art. 863.