DONALD TEAL, MARGARET TEAL, &
DIANE TEAL ROBINSON INDIVIDUALLY
AND ON BEHALF OF THEIR FAMILY
MEMBER, HUGH TEAL

VERSUS

SANDRA ZEAGLER & HUGH TEAL

NO. 21-CA-586

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 74,176, DIVISION "A"
HONORABLE MADELINE JASMINE, JUDGE PRESIDING

July 06, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Stephen J. Windhorst

**REVERSED AND REMANDED**
    **JGG**
    **RAC**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
First Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
DONALD TEAL, MARGARET TEAL, AND DIANE TEAL ROBINSON
    Robert Felder
    Kevin Dills
    James Domengeaux

COUNSEL FOR DEFENDANT/APPELLANT,
HUGH TEAL AND SANDRA TEAL, AND DEFENSE COUNSEL STEPHEN H.
KUPPERMAN AND MICHAEL A. BALASCIO
    Stephen H. Kupperman
    Michael A. Balascio
    Bruce L. Feingerts

**GRAVOIS, J.**

Appellants—defendant, Mrs. Sandra Zeagler Teal ("Sandra"), and her defense counsel, Bruce Feingerts, Stephen Kupperman, and Michael Balascio—appeal the trial court's December 30, 2020 judgment on a Motion for Sanctions filed by plaintiffs which ordered appellants to pay plaintiffs' court costs for the filing of the Motion for Sanctions, as well as attorney's fees in the amount of $2,500. For the following reasons, we reverse the judgment under review and remand the matter to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

This matter stems from a Petition for Declaratory Judgment and Injunctive Relief filed on July 18, 2019 against defendants, Sandra Zeigler (who later married Hugh Teal) and Hugh Teal.[1] Plaintiffs are the brother (Donald Teal), sister-in-law (Margaret Teal), and niece (Diane Robinson) of Hugh Teal.[2] The petition asserts that Hugh was being taken advantage of by Sandra, who had been hired as his caregiver.

By way of background, in 2017, Hugh was an eighty-eight-year old retired engineer. He lived alone in Metairie, Louisiana, having never married. His only close relatives, his younger brother Donald, Donald's wife Margaret, and their daughter Diane Robinson (Hugh's niece), a nurse, lived in Florida. On June 28, 2017, Hugh executed a "Durable Power of Attorney for Health Care of Hugh E. Teal" in favor of Margaret Teal and Diane Robinson, successively (the "2017 POA").

The 2017 POA was seven pages long and contained various provisions. It was adopted from a form found by plaintiffs. Article II stated that the POA would

---

[1] Hugh Teal and Sandra Zeagler were married on January 8, 2020, during the pendency of this litigation. Hugh passed away on February 24, 2021.

[2] Plaintiff Donald Teal, Hugh's brother, passed away a few days before the February 20, 2020 hearing, as evidenced by the transcript of that hearing.

take effect upon Hugh's "incapacity to make my own health care decisions, shall survive such incapacity or disability and shall continue during incapacity to the extent permitted by law or until revoked." The 2017 POA further declared that "[f]or purposes of this document, incapacity shall mean my inability to exercise informed medical consent. This shall include my inability to exercise rational judgment regarding my health care or to understand the risks, benefits, and alternatives involved in particular health care decisions. For purposes of this Power of Attorney, determination of incapacity shall not require a judicial finding of incapacity."

As his age-related physical and medical challenges mounted, in 2018 Hugh hired Sandra to be his part-time caregiver. In November of 2018, Sandra notified Donald, Margaret, and Diane that in order to better care for Hugh, she was moving him into her home in LaPlace, Louisiana, on a permanent basis. As it seemed to them that Hugh did not object to this arrangement, the Teals "went along" with the decision.

On May 9, 2019, Hugh executed a new "Durable Medical Power of Attorney" (the "2019 POA") appointing Sandra as his medical decision maker. This 2019 POA was duly witnessed and notarized by William Neilson, an attorney not otherwise associated with any party in this lawsuit. However, this 2019 POA was not given to plaintiffs until September 18, 2020, as part of discovery, and the timing of its production formed the basis for the Motion for Sanctions filed by plaintiffs on October 5, 2020, which is discussed in more detail below.

According to the record, later in May of 2019, Hugh was hospitalized in intensive care with ailments that included low sodium levels, which affected his physical and mental health. The petition further asserts that Diane Robinson, accompanied by her father, Donald Teal, drove to Louisiana to oversee her uncle's

medical care under the authority granted to her in the 2017 POA.[3]  Plaintiffs alleged in their petition that Sandra attempted to usurp and negate Diane's medical decision-making authority on behalf of Hugh in several respects, though Sandra ultimately acquiesced to Diane's medical decisions at that time.  However, plaintiffs alleged that after Diane and Donald returned to Florida, Sandra stopped informing them about Hugh's medical condition and progress, contrary to an agreement they had made with her prior to leaving.  Hugh was eventually discharged from the hospital and returned home to LaPlace.

Plaintiffs filed their petition against Hugh and Sandra on July 18, 2019, specifically noting that in the weeks after Diane and Donald had returned to Florida after Hugh's hospitalization in May of 2019, they "learned" that the 2017 POA had "apparently" been revoked and that one or more new POAs had been given instead to Sandra.  The record reflects that plaintiffs were informed about their revoked POA by Hugh's attorney, Mr. Feingerts.  Plaintiffs' petition questioned whether Mr. Feingerts was in fact Hugh's attorney, alleging that they had never heard Hugh confirm this.  At the time they filed suit, as previously noted, plaintiffs had not seen a copy of this new POA.

The petition sought, among other things, a declaratory judgment that Hugh lacked capacity to make changes to his 2017 POA, as well as any decisions he may have made regarding giving Sandra access or control over his finances, assets, and medical treatment, and therefore sought to nullify the 2019 POA in favor of Sandra, as well as any other legal acts Hugh may have entered into in the days/weeks following his May 2019 hospitalization.

---

[3] The 2017 POA actually granted medical decision making first to Margaret Teal and then successively to Diane Robinson, not jointly.  As noted above, it also specifically became operative in the event of Hugh's incapacity to make his own health care decisions, not merely an illness or hospitalization.

Alternatively, the petition sought a declaration finding undue influence by Sandra upon Hugh, and a judgment invalidating all other legal decisions made as a result of that undue influence regarding Hugh's well-being, medical treatment, finances, and assets. The petition also sought an injunction against Sandra, preventing her from exercising any legal decision-making power regarding Hugh's affairs, medical, financial, or otherwise.

Plaintiffs' petition additionally alleged, on information and belief, that Sandra and/or Mr. Feingerts had been given power to access Hugh's monetary accounts, including being made signatories to some accounts and being given access to change some of Hugh's investment accounts. Plaintiffs alleged that upon information and belief, Hugh lacked legal capacity to grant the new POA and financial authorizations to Sandra, and/or the POA/authorizations were the result of undue influence on Hugh by Sandra. Plaintiffs also alleged increasing efforts by Sandra and Mr. Feingerts to isolate Hugh from them and limit/monitor all communications between them.

On the same day the petition was filed, plaintiffs also filed a Motion for Injunctive Relief and Request for Expedited Hearing with supporting memorandum.

On October 29, 2019, defendants filed Dilatory Exceptions of Vagueness and Lack of Procedural Capacity, which were originally set for hearing on December 6, 2019.[4] On November 25, 2019, plaintiffs filed an Opposition to defendants' exceptions of vagueness and lack of procedural capacity.

Also on November 25, 2019, plaintiffs filed a Motion to Disqualify Mr. Feingerts from participating as counsel for defendants, citing Rule 3.7(a) of the

---

[4] The exception of lack of procedural capacity was based upon defendants' assertion that Hugh was a competent person and had not provided—nor is he alleged to have provided—authority to any of the plaintiffs to assert any claim on his behalf, and further, that he had not been interdicted and no curator had been appointed on his behalf.

Louisiana Rules of Professional Conduct, arguing that it was likely he would be a "material" witness in the matter. Defendants filed an Opposition thereto. The matter was heard on January 10, 2020, along with defendants' exceptions, and testimony was taken from witnesses in the motion for injunctive relief.

Meanwhile, on January 8, 2020, Hugh and Sandra were married.

Plaintiffs filed a First Amended and Supplemental Petition on January 21, 2020, alleging that Sandra had committed physical and mental abuse, battery, and intentional infliction of emotional distress upon Hugh, relating incidents from 2019 that they had learned about through deposition testimony of two former caregivers who had been hired by Sandra. The amended petition also sought nullity of the marriage between Hugh and Sandra on the basis that Hugh lacked legal capacity to enter into marriage, and also undue influence by Sandra.

On January 24, 2020, the parties entered into a Joint Stipulation regarding a competency evaluation on Hugh, setting forth the terms and conditions for such an evaluation. On January 31, 2020, plaintiffs filed a Motion for Protection from Physical and Mental Abuse against Sandra in favor of Hugh, additionally seeking orders terminating or restricting her ability to make health care decisions or financial decisions for him, under a purported POA or otherwise. Defendants filed a Peremptory Exception of No Right of Action relative to the amended petition's request that the marriage between Hugh and Sandra be nullified, which was submitted on briefs. The Motion for Protection was heard on February 20, 2020 at which time Hugh was present and testified.

The trial court rendered judgment on the exceptions on July 21, 2020, overruling the exception of vagueness, the exception of lack of procedural capacity, and the exception of no right of action. The court further noted that the agreed-to competency evaluation of Hugh had not yet occurred, and set a status conference for August 5, 2020.

On September 21, 2020, defendants filed an Answer and Affirmative Defenses to the petition and the amended petition. Meanwhile, the parties were engaged in efforts to coordinate the competency examination of Hugh, as evidenced by defendants' Motion to Clarify or Modify Joint Stipulation and Order on Competency Evaluation filed on September 16, 2020, and plaintiffs' response thereto. On October 12, 2020, the trial court ruled on the Motion to Clarify, granting it in part and denying it in part, setting forth conditions and particulars regarding the competency examination.[5]

On October 5, 2020, plaintiffs filed the subject Motion for Sanctions against Sandra and her defense counsel, arguing violations of La. C.C.P. arts. 863 and 1420, as well as various rules of the La. Rules of Professional Conduct.[6] The Motion for Sanctions asserted that it was based upon "newly learned facts of their repeated misrepresentations suggesting that the Power of Attorney granted by Hugh Teal to Plaintiffs had been revoked, when, in fact, these representations by the Defense were not true, and they knew it." In the memorandum in support, plaintiffs alleged that they "learned" for the first time, via defense document production on September 18, 2020, that the 2017 POA had allegedly not yet been revoked at the time they filed suit in July of 2019, nor was it revoked at the time various hearings in this matter took place on December 2019, January 2020, and February 2020. They argued that the 2017 POA was not revoked until July and/or August of 2020, as evidenced by two documents produced along with the 2019 POA, and that defense counsel had known this the entire time, yet repeatedly "suggested" the contrary to the Court, undersigned counsel, plaintiffs themselves,

---

[5] Dr. John W. Thompson of Tulane University ultimately conducted a competency examination of Hugh and issued a report on January 29, 2021, the contents of which remain confidential under HIPAA, 42 U.S.C. § 1320, *et seq.*

[6] Plaintiffs asserted that the following Rules of Professional Conduct were violated: Rule 3.3, Candor towards the Tribunal; Rule 3.4, Fairness to Opposing Party and Counsel; Rule 4.1, Truthfulness in Statements to Others; and Rule 8.4, Misconduct.

and had attempted to preclude discovery of this fact. Plaintiffs alleged that Mr. Feingerts had repeatedly misrepresented to family members (the plaintiffs), in or around June of 2019, that the 2017 POA had been revoked in favor of a new one given by Hugh to Sandra. The motion also alleged that Mr. Feingerts and newly enrolled defense counsel "failed to be forthcoming" at hearings regarding the existence of a written revocation of the 2017 POA. Plaintiffs also asserted that defense counsel continued to withhold Hugh's medical condition information from them on the basis that their 2017 POA had been revoked. They further sought a modification of the order governing the scope of the competency examination that the parties agreed would be conducted of Hugh, as well as access to Hugh's medical records, and access to the doctor's report on his competency.

The 2019 POA in favor of Sandra was produced to plaintiffs in document production on September 18, 2020. The 2019 POA granted medical decision-making powers to Sandra. It did not explicitly state that any past POAs were revoked. Defendants also produced at the same time two "Power of Attorney Revocation/Ratification" documents. The first one is dated July 29, 2020. It ratifies the 2019 POA given to Sandra, and explicitly revokes "all other powers of attorney, general, medical or otherwise." The second one, dated August 12, 2020, again ratifies the 2019 POA granted to Sandra (and references the July 29, 2020 ratification), and *explicitly* revokes the 2017 POA previously granted to Margaret Teal and Diane Robinson.[7]

Defendants opposed the Motion for Sanctions, positing that "[p]laintiffs' entire argument rests on the assertion that the 2017 power of attorney that Mr. Teal executed was not revoked until 2020, and that defendants falsely represented that it had been revoked in 2019." Defendants cited to plaintiffs' original petition that

---

[7] The two revocation/ratification documents were notarized by Leon H. Rittenberg, III, an attorney not otherwise involved with this litigation.

stated that they had "learned" in May of 2019 that the 2017 POA had "apparently" been revoked, thus arguing that plaintiffs had no basis for their claim for sanctions.

A hearing was held on November 5, 2020 on the Motion for Sanctions. In a judgment entered on December 30, 2020, the Motion for Sanctions was granted.[8] Plaintiffs were awarded monetary sanctions against Sandra and her defense counsel. In the judgment, Sandra and defense counsel were ordered to pay plaintiffs' court costs for the filing of the Motion for Sanctions, as well as attorney's fees in the amount of $2,500. Defendants filed a timely motion for a suspensive appeal, which was granted.

On appeal, defendants argue the following assignments of error:

1. The sanctions should be reversed because the record furnishes no evidence to support a finding that defendants ever represented that there had been a *written* revocation of the 2017 POA, as found by the trial court, nor was there evidence of "repeated requests" by plaintiffs for discovery to which defendants had refused to respond;

2. The court erred in awarding sanctions because sanctions are precluded when there is the "slightest justification" for the legal right asserted; and

3. Sanctions against all defense counsel and defendant Sandra are manifestly erroneous under La. C.C.P. arts. 863 and 1420, because the requirements for granting sanctions under those articles, specifically an attorney-signed certification of a pleading or discovery matter that fails to comply with the certifications in either of those articles as applicable, have not been met.

## STANDARD OF REVIEW

Statutes which authorize the imposition of penalties, or sanctions, are to be strictly construed. *Maxie v. McCormick*, 95-1105 (La. App. 1 Cir. 2/23/96), 669

---

[8] Also in the judgment, the motion to disqualify Mr. Feingerts was granted, the court ruling that Mr. Feingerts "should be disqualified as *litigation counsel* for Mr. Hugh Teal." (Emphasis in original.) Defendants sought this Court's supervisory review of the portion of the judgment that granted the motion to disqualify Mr. Feingerts. That matter is not before us in this appeal.

The judgment also denied the motion for protection from abuse, filed by plaintiffs, the court finding that plaintiffs had not met their burden of proof. The judgment did not grant plaintiffs' requests for medical records or an alteration of the order concerning the competency examination of Hugh Teal.

So.2d 562, 564-65, citing *Hart v. Allstate Insurance Company*, 437 So.2d 823, 827 (La. 1983).

The appellate standard of review used in analyzing La. C.C.P. art. 863 and La. C.C.P. art. 1420 violations, whether a trial court's factual determination that either article was, or was not, violated is reviewed on appeal pursuant to the "manifest error" or "clearly wrong" standard. *Maxie v. McCormick*, *supra*, 669 So.2d at 565; *Martin v. Martin*, 14-749 (La. App. 5 Cir. 2/25/15), 168 So.3d 829.

## FIRST ASSIGNMENT OF ERROR

### *Misrepresentations by defendants; multiple requests made to defendants*

Appellants first argue that the sanctions should be reversed because the record furnishes no evidence to support a finding that defendants ever represented that there had been a *written* revocation of the 2017 POA, as found by the trial court, nor was there evidence of "repeated requests" by plaintiffs for discovery to which defendants had refused to respond.

Appellees' brief, as well as their Motion for Sanctions, takes the clear position that the 2017 POA was not revoked until Hugh executed the two 2020 revocation/ratification documents noted above, and that defense counsel's repeated assertions in correspondence and pleadings that the 2017 POA had been revoked in 2019 prior to those documents' execution were therefore misleading and sanctionable.

In its reasons for judgment, the trial court found that counsel for defendants had made numerous representations, in emails and in "in-court" statements, that consistently implied and represented that there was in fact a *written* revocation of Hugh's 2017 POA. The court found that "defendants' repeated representations to the Court that the medical power of attorney had been revoked, without ever producing evidence thereof, despite repeated requests, sanctionable." The court further stated that though Louisiana law does not require a written revocation,

"defendants have consistently implied and represented to the Court that there was in fact a written revocation." The court specifically referenced the in-court statements as occurring during a January 20, 2020 court hearing, a January 16, 2020 letter to the court, and a December 4, 2019 brief filed with the court.[9]

The trial court's statement in its reasons for judgment, that "defendants' repeated representations to the Court that the medical power of attorney had been revoked, without ever producing evidence thereof, despite repeated requests …" is not supported by the record. Noticeably missing in this statement is the word "written." The trial court stated that in the three noted places, defendants implied that there was a written revocation of the 2017 POA. This Court has meticulously reviewed the sources cited by the trial court, as well as the entire appellate record, and can find no instances in the appellate record, where La. C.C.P. arts. 863 and 1420 are applicable or otherwise, where counsel for defendants represented or misrepresented that the 2017 POA had been revoked *in writing*. Even plaintiffs' own petition does not claim this, instead stating that plaintiffs "learned" that their 2017 POA had "apparently" been revoked in favor of one granted to Sandra. No mention is made of a written revocation or being informed of the same, though plaintiffs note they had not received a copy of any POA in favor of Sandra.

Plaintiffs' Motion for Sanctions does not allege that defense counsel represented that the 2017 POA was revoked *in writing*. The Motion for Sanctions alleges that defense counsel represented that the 2017 POA had been revoked as long ago as 2019, but now that plaintiffs had received the September 2020 document production containing the 2019 POA, and the July 2020 and August 2020 revocation/ratification documents, plaintiffs alleged that they now knew such

_____

[9] A January 20, 2020 transcript is not part of the record on appeal, although a January 10, 2020 transcript is attached to the motion for sanctions as an exhibit, as is a February 20, 2020 transcript. The December 4, 2019 brief appears to be "Defendants' Reply Memorandum in Further Support of Dilatory Exceptions of Vagueness and Lack of Procedural Capacity."

previous representations to be false. Plaintiffs' basis for the sanctions appears to rest on their conclusion that Louisiana law requires a POA to be revoked in writing, and their resultant conclusion that defense counsels' 2019 statements that the 2017 POA had been revoked necessarily implied that the revocation had been in writing.[10] However, upon review of the record, this Court has found no instance that supports the trial court's factual conclusion that defense counsel represented or implied that Hugh Teal's alleged revocation of the 2017 POA had been in a written instrument.

Likewise, the trial court's finding that plaintiffs made "repeated requests" for a written POA are not borne out by the record. As appellants point out in brief, plaintiffs first served a subpoena *duces tecum* on defendants on December 23, 2019, to which defendants timely objected on various grounds. In the meantime, the parties have themselves taken note of delays in the litigation caused by the state of emergency declared in March of 2020 due to the global Covid pandemic. The record is devoid of evidence that plaintiffs challenged the objections, sought a conference to discuss responses, or filed motions to compel prior to the production of these documents in September of 2020. The record is likewise devoid of plaintiffs serving any other discovery requests upon defendants. Accordingly, there is no legal or factual basis for finding that defendants refused to cooperate with "repeated requests."

We thus find merit to this assignment of error.

---

[10] Powers of attorney, otherwise known as a mandate, may be revoked at any time by the principal. La. C.C. art. 3025. As pointed out by defendants, Article 3025 does not require that such revocation be in writing. *See Landreneau v. Granger*, 401 So.2d 634, 638 (La. App. 3d Cir. 1981) (discussing predecessor Article 3028). Thus, defendants' statements, made in 2019 and thereafter, that the 2017 POA had been revoked in May of 2019, were not necessarily misstatements of fact or law.

## SECOND ASSIGNMENT OF ERROR

### *"Slightest justification" exception to award of sanctions*

Appellants next argue that the court erred in awarding sanctions because sanctions are precluded when there is the "slightest justification" for the legal right asserted. We agree.

Defendants' position has been clear before and during the litigation that Hugh revoked the 2017 POA in 2019. The record demonstrates that plaintiffs were informed by Hugh's counsel, on several occasions, prior to this lawsuit being filed and afterwards, that Hugh had revoked the 2017 POA in favor of one granted to Sandra. Because Hugh was allowed under Louisiana law to revoke the 2017 POA, at any time, orally, even without granting a successive POA to someone else or necessarily by executing a written revocation, it necessarily follows that defendants' position, that the 2017 POA was revoked in 2019 by Hugh by oral communication, though disputed, has a basis in law.

As appellants note in brief, the facts are not disputed, only the legal effects of these facts. As evidenced by their petition, plaintiffs were informed in 2019 that Hugh revoked their 2017 POA. Hugh executed several previously described legal documents in 2019 and 2020. Plaintiffs have continued to allege that Hugh lacked legal capacity in 2019 to revoke the 2017 POA, or to execute the 2020 revocation/ratification documents. Articles 863 and 1420 are intended only for exceptional circumstances and are not to be used simply because parties disagree as to the correct resolution of a legal matter. *Murphy v. Boeing Petroleum Servs., Inc.*, 600 So.2d 823, 827 (La. App. 3d Cir. 1992). As the *Murphy* court noted, the "slightest justification" for the exercise of a legal right precludes sanctions. *Id.*

We thus also find merit to this assignment of error.

## THIRD ASSIGNMENT OF ERROR

### *Applicability of La. C.C.P. arts. 863 and 1420*

Last, appellants argue that sanctions against all defense counsel and defendant Sandra are manifestly erroneous under La. C.C.P. arts. 863 and 1420, because the requirements for granting sanctions under those articles, specifically an attorney-signed certification of a pleading or discovery matter that fails to comply with the certifications in either of those articles as applicable, have not been met.

La. Code of Civil Procedure article 863 allows for the imposition of sanctions against an attorney and/or the represented party when an attorney or party has signed a pleading in violation of the certifications listed in paragraph B of Article 863. This paragraph requires the signing attorney to certify that:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

Article 863, by its very terms, does not apply when the signature is affixed to a document which is not a pleading. According to La. C.C.P. art. 852, pleadings in civil actions consist of "petitions, exceptions, written motions, and answers." *Maxie v. McCormick*, 669 So.2d at 564-65; *Beard v. Beard*, 01-1381 (La. App. 5 Cir. 5/15/02), 821 So.2d 45, 50.

Regarding discovery matters, Article 1420 allows for the imposition of sanctions when an attorney or party has signed a request for discovery, or response

or objection thereto, in violation of the certifications listed in Article 1420. *Id.*
Paragraph B of that article states:

> B. The signature of an attorney or party constitutes a certification by him that he has read the request, response, or objection POA and that to the best of his knowledge, information, and belief formed after reasonable inquiry the request, response, or objection is:
>
> (1) Consistent with all the rules of discovery and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
>
> (2) Not interposed for any improper purpose, such as to harass or to cause unnecessary or needless increase in the cost of litigation; and
>
> (3) Not unreasonable, unduly burdensome, or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

To impose sanctions under either Articles 863 or 1420, the trial court must factually find that the signed pleadings or discovery requests did not comply with the articles' requirements—that is, that they were not consistent with the rules of discovery or not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, were interposed for an improper purpose, or were unreasonable, unduly burdensome, or expensive. *Beard v. Beard*, 821 So.2d at 50-51, citing La. C.C.P. arts. 863(B) and 1420(B); *Sanchez v. Liberty Lloyds*, 95-0956 (La. App. 1 Cir. 4/4/96), 672 So.2d 268, 272, *writ denied*, 96-1123 (La. 6/7/96), 674 So.2d 972; *Maxie, supra*, 669 So.2d at 565.

As an initial matter, email messages do not fall within the purview of either Article 863 or Article 1420, as they are neither signed pleadings nor signed discovery matters listed in Article 1420. Accordingly, email messages cannot form the basis for an award of sanctions under either article.[11] Nor, apparently, can transcripts or letters to the court that are not certified pleadings or discovery items

---

[11] In any event, this Court has reviewed the emails in question, and can find no representation, express or implied, from defense counsel that the 2017 POA was revoked in writing.

regulated by Article 1420. And as this Court has previously stated above, we have reviewed the one item cited by the trial court that is a pleading, defendants' "Reply Memorandum in Further Support of Dilatory Exceptions of Vagueness and Lack of Procedural Capacity," and do not find any express or implied representations therein that revocation of the 2017 POA was in writing, nor do we find any such representations in other pleadings or discovery items.

We thus also find merit to this assignment of error.

## DECREE

For the foregoing reasons, we find merit to each assignment of error and thus find that the trial court abused its discretion and was manifestly erroneous in awarding sanctions against appellants. Accordingly, the judgment on appeal awarding sanctions (court costs and attorney's fees) against appellants is reversed.[12] The matter is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED**

---

[12] We do not intend by this opinion to express any opinions as to the merits of any of the other issues or rulings involved in this litigation, including whether the 2017 POA was validly revoked by Hugh Teal, whether Hugh Teal was competent and had legal capacity at any and all times pertinent to this litigation, and whether Sandra Teal unduly influenced Hugh Teal in any ways.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 6, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-586

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE MADELINE JASMINE (DISTRICT JUDGE)
HONORABLE VERCELL FIFFIE (DISTRICT JUDGE)
VERCELL FIFFIE (APPELLEE)          JAMES DOMENGEAUX (APPELLEE)          ROBERT FELDER (APPELLEE)
KEVIN P. KLIBERT (APPELLANT)       BRUCE L. FEINGERTS (APPELLANT)       MICHAEL A. BALASCIO (APPELLANT)
STEPHEN H. KUPPERMAN (APPELLANT)

**MAILED**
KEVIN DILLS (APPELLEE)             JAMI L. ISHEE (APPELLEE)
ATTORNEYS AT LAW                   ATTORNEYS AT LAW
810 SOUTH BUCHANAN STREET          810 SOUTH BUCHANAN STREET
LAFAYETTE, LA 70501                LAFAYETTE, LA 70502