670 So.2d 785 (1996)
Rodney and Ashley DAUZAT, Plaintiffs-Appellees,
v.
TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, et al., Defendants.
Russell Potter, Appellant.
No. 95-1235.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
*786 Carol James Aymond, Jr., Bunkie, for Rodney A. Dauzat and Ashley Dauzat.
Russell L. Potter, Alexandria, Mark D. Pearce, Baton Rouge, for Trinity Universal Insurance Co. of Kansas.
Before PETERS, AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
The issue in this case is whether the trial court erred in imposing sanctions on the defendants' attorney for (1) subpoenaing the plaintiffs' physician's business, financial, and tax records and (2) the defendants' physician's nonappearance at his scheduled deposition. In two separate judgments, the trial judge ordered defense counsel, Russell Potter, to pay a total of $1,500 in sanctions to plaintiffs' counsel.
The defendants, Ward Nash, Jr., and Trinity Universal Insurance Company of Kansas, initially applied for supervisory writs. This court assigned the application docket number 95-1051. Thereafter, Mr. Potter personally appealed from the judgments, and his appeal was given docket number 95-1235. Since the issues are the same, we hereby treat the cases as consolidated and issue a separate decree in docket number 95-1051.
Plaintiffs, Rodney and Ashley Dauzat, filed suit against defendants for damages which allegedly resulted from a rear-end collision. The accident occurred at the intersection of Shirley Road and U.S. Highway 171 near Bunkie, Louisiana, on September 10, 1994.
On April 28, 1995, the trial court rendered summary judgment finding the defendants liable for the plaintiffs' injuries. The issue of damages was expressly reserved for trial. The trial court signed a judgment to this effect on May 4, 1995.
Thereafter, the trial court rendered two separate judgments against defendants' attorney, Mr. Potter. The first judgment ordered Mr. Potter to pay $500 in sanctions to plaintiffs' attorney, Carol Aymond, Jr., for the failure of Dr. Clifton Shepherd, defendants' retained physician, to timely appear at the taking of his deposition. This judgment also quashed Dr. Shepherd's trial testimony and dismissed plaintiffs' action for contempt brought against Dr. Shepherd. The second judgment ordered Mr. Potter to pay $1,000 in sanctions to Mr. Aymond due to Mr. Potter's wrongful issuance of a subpoena duces tecum for extensive financial records belonging to Dr. Michel Heard, plaintiffs' physician, and the St. Thomas Diagnostic Clinic. In said judgment, the trial court also quashed the subpoena duces tecum issued to Dr. Michel Heard by the defendants.
From these two judgments, Mr. Potter appeals. For the following reasons, we reverse.

*787 DR. SHEPHERD'S DEPOSITION
On April 6, 1995, plaintiffs filed a notice to take the discovery and trial deposition of Dr. Shepherd at his Lafayette, Louisiana office on June 8, 1995, at 2:00 p.m. By letter dated May 9, 1995, plaintiffs' counsel informed defense counsel that Dr. Shepherd had informed plaintiffs' counsel of his unavailability for the deposition scheduled for June 8, 1995. In the letter, plaintiffs' attorney asserted that, if Dr. Shepherd did not honor the deposition date, he would ask the trial court for permission to not send plaintiffs to Dr. Shepherd for their already scheduled May 16, 1995 independent medical examinations.
In response, defendants filed a motion to compel the independent medical examinations. On May 14, 1995, the trial court held a hearing on the motion and ordered the plaintiffs to submit to independent medical examinations with Dr. Shepherd on May 16, 1995. The plaintiffs did not comply with the order. On May 25, 1995, defendants filed a motion for sanctions for plaintiffs' failure to comply with the trial court's discovery order. The trial court apparently conducted a hearing on this matter on June 13, 1995, although no transcript appears in the record. Once again, the court ordered the plaintiffs to attend independent medical examinations. The trial judge also ordered the parties to agree on a date for the taking of Dr. Shepherd's deposition.
By letter dated June 13, 1995, the defendants informed plaintiffs' counsel that Dr. Shepherd would be available for the taking of his deposition on either June 20, June 26, or June 30. Plaintiffs' counsel issued a subpoena to Dr. Shepherd for the taking of his deposition on June 29, 1995, at 4:00 p.m. "at the Law office of Greg Tonore located on 416 West Main Street, Lafayette, Louisiana."
On June 28, 1995, Dr. Shepherd, appearing in proper person, moved for a protective order pursuant to La.Code Civ.P. art. 1426. Dr. Shepherd asserted that he received the notice on the day before, June 27, 1995. Dr. Shepherd also complained that no prior arrangements had been made by plaintiffs' counsel to take his deposition on the next day, June 29, 1995. He requested that if the deposition should go forward as scheduled, he would rather it occur at his office. On June 29, 1995, the trial judge signed an order which specified the deposition was to be taken on that day at Dr. Shepherd's office.
At 4:00 p.m., the attorneys were present at Dr. Shepherd's office. By 4:30 p.m., Dr. Shepherd had yet to appear nor had he notified the attorneys present as to the reasons for his tardiness. Without notifying defense counsel or anyone on Dr. Shepherd's staff, plaintiffs' attorneys departed Dr. Shepherd's office at that time. Immediately after plaintiffs' counsel left, defense co-counsel Mark Pearce dictated a statement into the record, the pertinent part of which is as follows:
It is now 4:30, by my watch. It's 4:30 by the clock on the table.
I have been at this office, this is Dr. Clifton Shepherd's office, in Lafayette, Louisiana, since 4:00. The deposition was scheduled by Mr. Aymond for 4:00 today.
Dr. Shepherd is here. Dr. Shepherd had previously not been available for today's deposition, but in order to accommodate Mr. Aymond's schedule, he rearranged his schedule. Unfortunately he is on the phone with a patient and/or the hospital, is my understanding. We are waiting for Dr. Shepherd now.
I returned to the room after a phone call at 4:30. Mr. Aymond and Mr. Jeansonne [plaintiffs' attorneys] are not here. I would also note that I am here to participate in the deposition, however, apparently something occurred in the room while I was not present and was not allowed to participate, nor was I summoned to participate, nor was I informed that anything would occur while I was not in the room.
Mr. Aymond and Mr. Jeansonne were both here at 4:00; they were here in the room moments ago, before I walked out to take a phone call, and now they are not here in the room.
This deposition was for discovery purposes only, was forced by video tape merely for the purpose of harassing Dr. Shepherd. Mr. Aymond has now left in another *788 attempt to continue to harass Dr. Shepherd and my office and myself.
I would ask that the costs of Dr. Shepherd for participating and rescheduling his entire afternoon of patients would be assessed personally against Mr. Carol Aymond, since his clients obviously had nothing to do with this tactic.
I would ask that the Court tax all of my costs for attending this deposition and this charade, and also tax my attorney's fees for the time that I spent attending this ridiculous show that has no place in the legal profession.
At 4:35 p.m., Dr. Shepherd appeared in his conference room for the deposition. In lieu of his deposition, Dr. Shepherd had the court reporter present transcribe an oral statement, the pertinent part of which follows:
I have been in my office since before 4:00 and I've had patient duties. I'm also on city call, which is a busy call. And I'm on call for the week.
I had a serious ankle and leg fracture that I operated on yesterday and I was right at about 4:15, wheneverjust before I was going to come in to do the deposition, I had to take a call from the nurses taking care of this man with the serious leg injury. And then, when I came in at 4:30, or just slightly after 4:30 for this deposition, the twothe lawyers requesting this deposition had left.
On July 5, 1995, in connection with what had occurred at Dr. Shepherd's office, plaintiffs filed a pleading entitled "Motion to Quash Testimony, Motion for Contempt, Motion for Sanctions, and Motion for Attorney's Fees." Therein, plaintiffs' counsel alleged that no explanation was given to them concerning Dr. Shepherd's tardiness. Plaintiffs asserted that Dr. Shepherd intentionally disregarded a court-issued subpoena to appear at 4:00 p.m. They sought to have Dr. Shepherd and/or defense counsel held in contempt, to have Dr. Shepherd's testimony quashed, to have Dr. Shepherd and/or defense counsel sanctioned, and to have an award of attorney's fees. The trial court scheduled a hearing on the matter for July 14, 1995.
At the hearing, the trial court severed the motion for contempt from plaintiffs' other motions and heard those motions first. The attorneys presented their versions of the events that transpired in Dr. Shepherd's office on June 29, 1995. Mr. Aymond stated that neither he nor his co-counsel were given a reason for Dr. Shepherd's tardiness. He stated that the waiting room was empty and that he saw no evidence of any patients there. They did not notify anyone of their 4:30 p.m. departure because no one was there for them to notify. He did not check all of the offices or examining rooms. Mr. Pearce stated that, when plaintiffs' attorneys left Dr. Shepherd's office, he was on the phone in another room. When Mr. Pearce returned to the conference room at 4:30 p.m., plaintiffs' attorneys had departed.
Immediately following the hearing, the court rendered oral reasons, which provide pertinently as follows:
This court intervened I can assure you, we'll never intervene again, in trying to assist, both, defense counsel, and out of courtesy to the doctor, and got Mr. Aymond to agree to take the deposition at 4:00 PM at the doctor's office. Now, subpoenas are not just mere pieces of paper; they mean things. When they say 4:00 PM, they mean 4:00 PM. They don't mean 6:00 PM or 7:00 PM or 4:30. It seems to me, that after the consideration shown to the doctor, that he could have, at least, sent a member of his staff out to inform the counsel as to why there was a delay, or something of that nature. It is particularly odd to the court, that within minutes of Mr. Aymond leaving the doctor's office, the doctor appears. Perhaps, that is al[l] innocent. But, given the particular history of this case, the court does not feel that it's proper, or allows him to testify. As far as not being able to exclude witnesses' testimony at trial, I think, the court, under it's supervisor authority, they will issue all needful orders and writs in perpetuation of its jurisdiction over case. And, I don't know that Mr. Aymond can take a discovery deposition within the next two weeks, or a trial, or that the defendant can tak[e] a trial deposition; that's not been shown.

*789 The court, therefore, is going to impose a sanction of excluding the doctor's testimony at the trial-in-chief of this matter, and will award attorney's fees of $500, to which ruling your objection is noted.
On August 9, 1995, the trial court signed a judgment in this matter granting the plaintiffs' motion to quash Dr. Shepherd's testimony and sanctioning Mr. Potter by ordering him to pay Mr. Aymond $500. The trial court also dismissed the motion for contempt against Dr. Shepherd and defense counsel.
The trial court's assessment of sanctions against the defendants' attorney for Dr. Shepherd's late appearance at his deposition has no basis in law. La.Code Civ.P. art. 1356, as worded prior to the 1995 legislative session, governs the issuance of subpoenas for depositions. It provides as follows:
Proof of service of a notice to take a deposition constitutes sufficient authorization for issuance by the clerk or judge of the district court wherein the action is pending of subpoenas and subpoenas duces tecum. All provisions applicable to subpoenas and subpoenas duces tecum shall apply to subpoenas and subpoenas duces tecum issued under the provisions of this Article, except as otherwise provided by law.
This article was subsequently amended by Act number 410 and Act number 1068 of the 1995 legislative session.
A person who fails to obey a subpoena, without reasonable excuse, may be adjudged in contempt of court. La.Code Civ.P. art. 1357. Clearly, these two articles do not allow for the court to order a party's attorney to pay the opposing party's attorney's fees when a non-party witness fails to appear or is tardy for a deposition.
Additionally, the sanction is not properly based upon La.Code Civ.P. art. 1473, which provides pertinently as follows:
If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails to appear before the officer who is to take his deposition, after being served with a proper notice,....the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
The sanctions of this article do not apply to a non-party deponent or a deponent not designated as representing an organization which is a party. Plaintiffs have no cause of action against Mr. Potter for Dr. Shepherd's disobedience of the subpoena. A witness-deponent who disobeys a subpoena for a deposition is subject only to the contempt authority of the court pursuant to La.Code Civ.P. art. 1357. Hart v. Hart, 460 So.2d 1129 (La.App. 2 Cir.1984). It therefore follows that the party's attorney cannot be sanctioned pursuant to Article 1473 for a non-party deponent's failure to comply with a subpoena. The trial court dismissed the plaintiffs' contempt action against Dr. Shepherd, the only action which the plaintiffs could pursue for his failure to timely appear.
For these reasons, we conclude that the assessment of sanctions against Mr. Potter was error.

SUBPOENA OF DR. HEARD'S FINANCIAL RECORDS
On June 1, 1995, defendants issued a subpoena duces tecum to Dr. Robert Osborne to produce the following at his deposition scheduled for June 20, 1995:
Copies of any and all contracts between Dr. Robert Osborne and Dr. Michael Heard and/or the St. Thomas Diagnostic Center, Inc. and any other financial arrangements Dr. Robert Osborne may have between said entities.
In response, on June 14, 1995, plaintiffs filed a motion to stay and to quash the subpoena and for a protective order. Therein, plaintiffs asserted that the information sought was irrelevant to the case and that the subpoena was issued to harass and intimidate Dr. Osborne, Dr. Heard, and the St. Thomas Diagnostic Center. The trial court set a hearing on this matter for June 19, 1995. Although no hearing transcript is included in the appellate *790 record, it is apparent from the trial judge's statements made at a subsequent hearing that the court quashed the subpoena due to the irrelevance of the information sought.
On July 7, 1995, the defendants issued a subpoena duces tecum to Dr. Heard commanding him to produce, at the July 26, 1995 trial, the following information:
1. Any and all income tax returns since 1990, 1991, 1992, 1993 and 1994, including all schedules of depreciation of equipment and any other schedules and attachments for the St. Thomas Diagnostic Clinic and/or St. Thomas Clinic, Inc.
2. All diaries and logs or any other documentation which would evidence the use of any CT machines, MRI machines and the St. Thomas Diagnostic Clinic, Inc. and/or St. Thomas Clinic, Inc. for the years 1994 and 1995.
3. Any and all correspondence or information contained in any data base or computer which is subject to being printed out, concerning correspondence to attorneys in regards to solicitation of referrals for treatment.
In response to this subpoena duces tecum, plaintiffs filed a pleading entitled "Motion In Limine/Motion to Quash Testimony, Motion to Quash Subpoena Duces Tecum, Rule for Contempt, Motion for Sanctions, and Order." Plaintiffs sought attorney's fees and costs for the filing of responsive motions, sanctions pursuant to La.Code Civ.P. arts. 371 and 863, and the quashing of certain questions posed to Dr. Heard in his trial deposition. The trial court set a hearing on these multiple motions for July 13, 1995.
During the hearing, the trial judge issued the following comments to Mr. Pearce, defendants' attorney:
I've already ruled that blanket subpoenas for financial records of this doctor and this Diagnostic Center are highly improper. They're not relevant to this case. I allowed you, or whoever is going to take the deposition, to inquire of this doctor about any financial arrangements he may have with Mr. Aymond [plaintiffs' counsel] in reference to this case and other cases.
But as for as subpoenaing all of this man's income tax records, any diaries and logs that he has with the Diagnostic Center, my God! First of all, it would invade the physician-patient privilege of, perhaps, thousands of people, who are not parties to this suit. That's a highly improper subpoena.
In oral reasons given, the trial court stated:
[T]he court has previously made clear that the seeking of these types of records is not proper. Despite that, Mr. Potter caused to issue a Subpoena Duces Tecum, in essence, subpoenaing the same material, contrary to this court's prior order ... I am going to sanction, and impose a $1,000 attorney's fees sanction to be payable to Mr. Aymond, for the filing and seeking of this Writ of Subpoena Duces Tecum in this matter. I'm going to order that no future Writs of Subpoena Duces Tecum issue that seek any financial information, not pertinent to the case before the court; and if that is done, its going to be punishable by contempt.
On August 9, 1995, the trial court signed a judgment granting the motion for sanctions and quashing the subpoena duces tecum. The trial court also ordered Mr. Potter to pay $1,000 to Mr. Aymond as sanctions.
On appeal, Mr. Potter contends that the imposition of sanctions pursuant to La.Code Civ.P. art. 863 was improper because that article requires a signed pleading as a predicate to the imposition of sanctions. Mr. Potter argues that a subpoena duces tecum is not a signed pleading within the meaning and intendment of this article. We agree.
La.Code Civ.P. art. 863 provides, in pertinent part, as follows:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the *791 signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
This article is intended for only exceptional circumstances. "The slightest justification for the exercise of a legal right precludes sanctions." Murphy v. Boeing Petroleum Services, Inc., 600 So.2d 823, 827 (La.App. 3 Cir.1992). "This article requires the attorney or litigant who signs a pleading to make an objectively reasonable inquiry into the facts and the law." Bankston v. Alexandria Neurosurgical Clinic, 583 So.2d 1148, 1154 (La.App. 3 Cir.), writ denied, 589 So.2d 1066 (La.1991).
La.Code Civ.P. art. 852 defines pleadings as "petitions, exceptions, written motions, and answers." A subpoena duces tecum clearly does not fit within this exclusive listing. La.Code Civ.P. art. 1354 defines a subpoena duces tecum as one which may order a person to "produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given." Such subpoenas are issued in the same manner as regular subpoenas for the attendance of witnesses, by the clerk or judge of the court at the request of a party. La.Code Civ.P. art. 1351. Therefore, a party need not file a formal pleading to have a subpoena issued by the clerk or the judge. Neither the request for a subpoena nor the subpoena itself are signed pleadings. Mr. Potter did not violate Article 863 by having a subpoena duces tecum issued to Dr. Heard.

DECREE
For the reasons assigned, the trial court's judgment is reversed. This suit is remanded to the trial court for further proceedings. All costs are hereby assessed to plaintiffs, Rodney and Ashley Dauzat.
REVERSED AND REMANDED.