# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-822 consolidated with  09-1509


## RICHARD C. BENTLEY

## VERSUS

## BOBBY FANGUY


**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## SIXTEENTH JUDICIAL DISTRICT COURT
## PARISH OF ST. MARTIN, NO. 69461
## HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**REVERSED IN PART, AFFIRMED IN PART.**

**Stephen Gary McGoffin**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**Counsel for Defendant Appellee:**
**Bobby Fanguy**


**Ed W. Bankston**
**Attorney at Law**
**P. O. Box 53485**
**Lafayette, LA 70505**
**(337) 237-4223**
**Counsel for Plaintiff Appellant:**
**Richard C. Bentley**

**Shawn A. Carter**
**Durio, McGoffin**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**Counsel for Defendant Appellee:**
**Bobby Fanguy**

**Ryan M. Goudelocke**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505-1308**
**(337) 233-0300**
**Counsel for Defendant Appellee:**
**Bobby Fanguy**

**SAUNDERS, Judge.**

This is a case of a dispute between neighbors. The plaintiff filed a petition for injunction and damages related to an assertion that his neighbor was illegally disposing waste from his home onto the plaintiff's property, namely the ditch that runs across the plaintiff's front yard. The defendant responded with several reconventional demands, including a request for permanent injunction enjoining the plaintiff from certain activities, a claim that the plaintiff had damaged his Russian Olive Hedges, and a claim for general damages.

The trial court denied the plaintiff's request for injunction and damages. The trial court also sanctioned the plaintiff in the amount of $137,041.75 for the attorney's fees expended by the defendant. Further, the trial court awarded the defendant an injunction to prevent certain activities by the plaintiff and $5,000.00 for damage to the hedge. Finally, the trial court denied the defendant any general damages and reimbursement of costs associated with the subsequent sale of the defendant's home. All costs of the proceedings at the trial level were assessed to the plaintiff.

Both the plaintiff and the defendant raised issues with the trial court's judgment. We reverse the trial court's sanctions against the plaintiff and affirm the remainder of the judgment.

**FACTS AND PROCEDURAL HISTORY:**

Richard Bentley (Bentley) and Robert Fanguy (Fanguy) were neighbors in the Country Estates Subdivision located in St. Martin Parish, Louisiana. According to Bentley's wife, she detected a substance in the ditch in front of their home that she surmised was potentially hazardous, and that its source was from the Fanguy residence. Bentley then took samples from the ditch and had tests conducted on those samples. The results of one of those tests showed a fecal coliform level as "too

numerous to count." Bentley brought the test result to Fanguy's attention, but without success.

On or about June 24, 2005, Bentley filed a lawsuit against Fanguy, alleging that Fanguy's waste management system discharged an effluent with elevated levels of fecal coliform that created a nuisance and public health hazard directly onto Bentley's property in violation of Louisiana health standards. Bentley's suit requested an injunction and damages for the unhealthy condition, emotional distress, inconvenience, and his loss of enjoyment of life. Fanguy answered the suit in the form of a general denial alleging that his waste management system conformed to all applicable health regulations and reconvened against Bentley, seeking injunction and damages.

A trial on the merits was conducted over several days. The trial court found that Bentley failed to carry his burden to prove that Fanguy had discharged an unhealthy effluent onto Bentley's property. Further, the trial court enjoined Bentley from entering Fanguy's property, obstructing the flow of Fanguy's drainage ditch or culvert, directing surveillance cameras at the Fanguy home, failing to maintain the grass in his own ditch below twelve inches, interfering with the peaceful enjoyment of the Fanguy home in any fashion, filing any lawsuit against Fanguy, his family, agents, employees, attorneys, or other consultants in any venue or docket number other than Division G of the 16th Judicial District Court, and prohibiting pruning, cultivation, or in any way damaging Fanguy's Russian Olive Hedge. The trial court also awarded $5,000.00 to Fanguy for damage it concluded that Bentley was responsible for to the hedge and sanctioned Bentley for $137,041.75, as attorney's fees to be paid to Fanguy. Finally, the trial court assessed Bentley $17,446.76 for

2

costs of the proceedings. Bentley and Fanguy both took issue with the trial court's judgment, and raised the following assignments of error:

**BENTLEY'S ASSIGNMENTS OF ERROR:**

1.    The trial court erred by its sanction of Bentley for attorney's fees in the amount of $137,041.75.

2.    The trial court erred by its judgment of damage to the Fanguy's Russian Olive Hedge in the amount of $5,000.00.

3.    The trial court erred by its assignment of costs to Bentley in the amount of $17,446.76.

4.    The trial court erred by failure to enjoin Fanguy from discharging untreated sewage onto Bentley's property, and by failing to award damages to Bentley.

**FANGUY'S ASSIGNMENTS OF ERROR:**

1.    The trial court erred in failing to award Fanguy general damages for Bentley's conduct.

2.    The trial court erred in failing to reimburse Fanguy for costs associated with selling his home.

**BENTLEY'S ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, Bentley contends that the trial court erred by sanctioning him in the amount of $137,041.75, the amount of attorney's fees incurred by Fanguy. We find that Bentley's assignment has merit.

The trial court below assessed sanctions against Bentley under La.Code Civ.P. art. 863. Louisiana Code of Civil Procedure Article 863 states:

> A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
>
> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is

3

warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.

F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.

The standard of reviewing such as assessment of sanctions is that of abuse of discretion. *Collins v. Ferrellgas, Inc.*, 96-810 (La.App. 3 Cir. 2/5/97), 689 So.2d 569. Sanctions under Article 863 are precluded when there exists justification *in the slightest* for a party to exercise its legal right. *Dauzat v. Trinity Universal Ins. Co. of Kansas*, 95-1235 (La.App. 3 Cir. 3/6/96), 670 So.2d 785 (emphasis added).

Our Fourth Circuit, in *Fairchild v. Fairchild*, 580 So.2d 513, 517 (La.App. 4 Cir.1991) (emphasis added) stated the following:

Article 863 is intended only for exceptional circumstances and is not to be used simply because parties disagree as to the correct resolution of a legal matter. See, *Gaiardo v. Ethyl Corporation*, 835 F.2d 479 (3rd Cir.1987), citing *Morristown Daily Record, Inc. v. Graphic Communications Union Local 8N*, 832 F.2d 31 (3rd Cir.1987). Furthermore, [nothing] in the language of Rule 11 or Article 863 empowers the district court to impose sanctions on lawyers [or litigants] simply because a particular argument or ground for relief is

4

subsequently found to be unjustified. *Gaiardo,* supra, citing *Golden Eagle Distributing Corporation v. Burroughs Corporation*, 801 F.2d 1531 (9th Cir.1986). Failure to prevail does not trigger a sanction award. *Gaiardo*, supra.

In determining a violation of Rule 11 or Article 863 the trial court should "avoid using the wisdom of hindsight and should test the signer's [or litigants] conduct by inquiring *what was reasonable to believe at the time the pleading, motion or other paper was submitted*." *Gaiardo*, supra at 484.

In the case before us, Bentley filed a petition for injunctive relief and damages against Fanguy on June 24, 2005. As such, we must look to determine what was reasonable for him to believe at that time. Prior to filing suit, Bentley had in his possession a report from Sherry Laboratories dated May 17, 2005, indicating that a sample provided to it on May 10, 2005, contained a level of fecal coliform that was greater than 600,000 ("too numerous to count") Colony Forming Units (CFU) per 100 milliliters. The significance of the result of that test in relation to Bentley's reasonable belief when he filed suit is revealed in Bentley's testimony at trial, which included the following:

Q      Is raw sewage the same thing as fecal coliform?

A      Is it - - Is fecal coliform makes up the vast majority of feces, yes. That's where the name feces comes from.

Q      That wasn't my question. My question is, is raw sewage and fecal coliform the same thing?

A      Yes.

Q      Okay.

A      To my understanding, yes.

Q      All right.

A      But I'm not an expert on the matter.
         . . . .

5

Q     Okay. The State of Louisiana has not established any comparable limits, has it, for residential treatment systems?

A     My understanding is that they accept that four hundred [CFU per 100 milliliters] fecal coliform is the limit, because it's the National Science Foundation, or - - I forget what that document that we have, has established that as the limit, as the acceptable limit for health standards.

In delving further into the record, we find more support for Bentley reasonably believing the contents of his petition against Fanguy in the form of his wife's testimony. Carol DiPietro, Bentley's wife, is a certified medical technologist by the American Society of Clinical Pathologists. Although not recognized by the trial court as an expert in this particular case, the trial court stated that had she done the actual testing of the samples from Bentley's ditch, it would recognize her as such. The following is an excerpt from her testimony:

Q     Okay. Now, let's get to the ditch situation. When did you first notice the problem with the ditch?

A     Well, it was - - it was on or about February 2005. I had noticed foul smells coming from the ditch that was next to the mailbox at the beginning of my driveway and the culvert, it was coming from Mr. Fanguy's house, so that the ditch was right next to the culvert. And the - - What I observed was large amounts of suspended fecal material and this black sludgy stuff that went from the ditch next to the mailbox at the beginning of the driveway, underneath the driveway, and about one - - one third of the way down the ditch in front of my home.

Q     Okay. And what did you do - - What did you do then?

A     Well, I was concerned because, to me, - - I mean, it was foul smelling, there was obvious fecal material there. You didn't have to do any testing to see that the system must have been septic, so I brought it to the attention of my husband and asked him to talk to Mr. Fanguy about it.

Mrs. DiPietro's testimony above indicates that Bentley's wife, prior to his filing suit, informed him that, in her opinion, there was fecal matter in the ditch in

front of their home, and that it was coming from Fanguy's residence. It is certainly reasonable for Bentley to give credence to his wife's opinion, especially given that she works in the area of identifying public health risks.

Bentley further testified that he had spoken to Fanguy in an attempt to settle their differences prior to his filing suit. Finally, Bentley's attorney at the time the suit was filed, Kenneth Miller, testified to the following:

Q      Did you file the original petition for damage [and] injunction in the lawsuit?

A      I did.

Q      And can you furnish the Court and testify as to the basis on which you filed that lawsuit?

A      Yes. Your Honor, when this lawsuit was filed, I had in my possession a document that was a report from Sherry Labs that showed the fecal content of the effluent, or at least water in the ditch in front of Mr. Bentley's home at numbers exceeding - - well, too numerous to count. That's what we had. That was obtained through an environmental company that Mr. Bentley had hired, and that was Page and Kraemer, If I'm not mistaken. The people at Page and Kraemer informed me through their employee, Mr. Dan Hubbard, I believe, that fecal coliform at that count was dangerous to human beings.
And after having sent notice of that to the neighbor, I believe, on behalf of Mr. Bentley requesting some assistance in getting that situation resolved and hearing nothing, the lawsuit was filed.

The testimony highlighted above coupled with the test results of a sample taken and tested prior to the time that Bentley filed his original suit against Fanguy, provide a reasonable basis for Bentley to believe that potentially harmful substances were originating from Fanguy's residence and those substances posed a risk to his family's health

Fanguy points out that Bentley was informed by two state agencies that his waste disposal system met all the necessary requirements prior to Bentley filing suit.

However, it is clear from the testimony of representatives of those respective agencies that no actual testing was done on the output of Fanguy's system, and that those agencies simply informed Bentley that Fanguy's system was an approved system.

Further, in the trial court's reasons for judgment regarding the imposition of sanctions, it noted that there were more economic remedies that Bentley could have pursued rather than file the original suit. While it appears the trial court was correct, this is not a relevant factor in determining whether La.Code Civ.P. art. 863 sanctions are imposed. Nor is the fact that Bentley has filed suits against Fanguy subsequent to the suit at issue. The purpose of those suits and potential La.Code Civ.P. art. 863 sanctions are appropriately dealt with in those other proceedings.

Accordingly, we find that the trial court abused its discretion in sanctioning Bentley $137,041.75. Therefore, we reverse that portion of the trial court's judgment.

**BENTLEY'S ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Bentley contends that the trial court erred by awarding Fanguy $5,000.00 for damage to Fanguy's Russian Olive Hedge. This contention lacks merit.

A finding that Bentley damaged Fanguy's Russian Olive Hedge is a finding of fact and subject to the well settled manifest error standard of review. "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id* at 1112.

In the case before us, Fanguy presented expert opinions regarding whether a

8

herbicide or other foreign substance had been applied to his Russian Olive Hedge and whether the pruning that Bentley had done to Fanguy's hedge had caused damage to it. Jason P. Ducote, an employee with the Louisiana Department of Agriculture, opined that "it appeared that a herbicide application had been directly applied to one side of the olive shrubs." Jim Foret, an arborist, testified that the severe pruning done to the Russian Olive Hedge could have caused root death. Further, he testified to the following:

> Q      All right. Did you notice any other type of damage to the plant?
>
> A      In that area, no. There was another area of a hedge that it appeared that something had [] burned the foliage.
>
> . . . .
>
> Q      All right. It would not be damage that would be a product simply of pruning?
>
> A      It was not pruning damage, that I could see.

The expert testimony presented by Fanguy provides a reasonable basis in finding that Bentley damaged Fanguy's Russian Olive Hedge whether that damage be by pruning or spraying a substance on it. Bentley cites La.Civ.Code art. 688 in defense of his admitted action of having the Russian Olive Hedge pruned. Louisiana Civil Code Article 688 states:

> A landowner has the right to demand that the branches or roots of a neighbor's trees, bushes, or plants, that extend over or into his property be trimmed at the expense of the neighbor.
>
> A landowner does not have this right if the roots or branches do not interfere with the enjoyment of his property.

This court, in the case of *Fontenot v. Central Louisiana Electric Co*, 147 So.2d 773 (La.App. 3 Cir. 1962), found that while an adjoining landowner can have a neighbor cut overhanging branches back to the property line at the neighbor's

9

expense, the adjoining landowner cannot cut the branches himself without permission of the neighbor. Therefore, we find Bentley's defense is without merit.

Next, Bentley argues that the trial court's award of $5,000.00 was baseless. We disagree.

A trial judge is afforded much discretion in the assessment of damages, and the adequacy of the award is determined by the circumstances of that case. *Olsen v. Johnson*, 99-783 (La.App. 3 Cir. 11/3/99), 746 So.2d 740. We do not find that the trial court's award was without substantiation. Fanguy testified that the hedge had the purpose of providing privacy to both he and his family, and that, after Bentley had the hedge pruned, it was inadequate for this purpose. Further, photographic evidence of the hedge after Bentley improperly pruned it showed substantial damage. The pruning was done over a span of over one hundred feet. Accordingly, we affirm the trial court's judgment in this regard.

**BENTLEY'S ASSIGNMENT OF ERROR NUMBER THREE:**

Bentley asserts in his third assignment of error that the trial court erred in its assignment of costs to him in the amount of $17,446.76. We find this assertion is without merit.

Louisiana Code of Civil Procedure Article 1920 states:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
>
> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

The trial court, in taxing court costs, is given great discretion and may assess those costs in any manner it deems equitable. La. Code Civ.P. art. 1920. The standard of reviewing assessment of court costs is abuse of discretion. *Trahan v.*

10

*Asphalt Associates, Inc.*, 01-311 (La.App. 3 Cir. 10/17/01), 800 So.2d 18.

In the case before us, the trial court assessed all costs of the proceedings to Bentley. Bentley lost his original suit for damages and injunction. Fanguy, while not prevailing on each of his several reconventional demands, obtained a permanent injunction against Bentley that barred Bentley from entering Fanguy's property, obstructing the flow of Fanguy's drainage ditch or culvert, directing surveillance cameras at the Fanguy home, failing to maintain the grass in his own ditch below twelve inches, interfering with the peaceful enjoyment of the Fanguy home in any fashion, filing any lawsuit against Fanguy, his family, agents, employees, attorneys, or other consultants in any venue or docket number other than Division G of the 16th Judicial District Court, and prohibiting pruning, cultivation, or in any way damaging Fanguy's Russian Olive Hedge. Finally, the trial court awarded $5,000.00 to Fanguy for damage it concluded that Bentley did to the hedge. Given that Fanguy obtained several aspects of the relief that he sought and the vast discretion of the trial court in assessing costs, we clearly find no abuse of discretion by the trial court in assessing all costs of the trial proceedings to Bentley.

**BENTLEY'S ASSIGNMENT OF ERROR NUMBER FOUR:**

In his final assignment of error Bentley argues that the trial court erred by failure to enjoin Fanguy from discharging untreated sewage onto Bentley's property, and by failing to award damages to Bentley. We find this assignment of error as related to the requested injunction is moot, and as related to the requested damages is completely without merit.

The issuance of a permanent injunction is governed by La.Code Civ.P. art. 3601, which states, in pertinent part, "[a]n injunction shall be issued in cases where

11

irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." The burden of proof necessary to have a permanent injunction is that of preponderance of the evidence. *Picard v. Choplin*, 306 So.2d 918 (La.App. 3 Cir. 1975).

The applicable standard of review when dealing with the issuance of a permanent injunction is that of manifest error. *Mary Moe, L.L.C. v. Louisiana Bd. of Ethics*, 03-2220 (La. 4/14/04), 875 So.2d 22. However, we need not review this issue as there is evidence in the record that Fanguy has relocated from the home located next to Bentley. Thus, Bentley's argument dealing with the injunction he requested is moot.

Bentley also argues that the trial court erred in denying him damages. Bentley's cause of action for damages was based upon La.Civ.Code art. 667, which states, in pertinent part, that "[a]lthough a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."

The trial court found that Bentley failed to prove that Fanguy's system discharged unhealthy effluent, and that the discharge from Fanguy's system presented an unreasonable health risk to Bentley or his family. This finding by the trial court is a finding of fact and subject to the manifest error standard of review. *Sistler*, 558 So.2d 1106.

In the case before us, representatives from both the Louisiana Department of Health and Hospitals and the Louisiana Department of Environmental Quality testified that Fanguy's system did not violate any of their respective rules. Testing done on the output of Fanguy's system showed a very large variation in levels of fecal

12

coliform, some of which did not violate any standards cited by Bentley. Moreover, there was testimony that fecal coliform is merely an indicator substance rather than a harmful one. Finally, there is testimony in the record that the source of fecal coliform in the samples taken to test could have originated from sources other than Fanguy's system. Therefore, we find that there is a reasonable basis in the record for the trial court finding that Bentley failed to carry his burden of proof. Thus, this assignment of error is without merit.

**FANGUY'S ASSIGNMENT OF ERROR NUMBER ONE:**

Fanguy, in brief, asserts that the trial court erred in failing to award him general damages for Bentley's conduct. We disagree.

Fanguy cites the protective covenants for Country Estates as a basis for the trial court to assess Bentley with general damages. However, this type of claim is one contemplated by La.Civ. Code art. 2315. The choice by the trial court to not award damages to Fanguy is a finding of fact and subject to the manifest error standard of review. *Sistler*, 558 So.2d 1106.

Fanguy claims that he and his wife suffered mental anguish, anxiety, inconvenience and harassment due to Bentley's conduct. Both Bentley and his wife testified that they never did anything of the nature to injure or harm the Fanguys either physically or mentally, while the Fanguys testified to the opposite. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id* at 1112. Accordingly, we find no merit to Fanguy's assertion, and affirm the trial court's denial of general damages to him.

13

**FANGUY'S ASSIGNMENT OF ERROR NUMBER TWO:**

Next, Fanguy contends that Bentley should reimburse him for the costs associated with Fanguy selling him home. Again, we find no credence in this contention.

Fanguy sold his home over a year and a half after any of the complained of activity by Bentley occurred and ceased. The trial court correctly found that any costs associated with Fanguy subsequently selling his home were not relevant to Fanguy's damage claims against Bentley. Thus, we deny this request for reimbursement.

**CONCLUSION:**

Bentley raised four assignments of error: that the trial court erred by its sanction of Bentley for attorney's fees, that the trial court in awarding Fanguy $5,000.00 for damage to his Russian Olive Hedge, that the trial court erred by assessing all costs incurred at the trial level to Bentley, and that the trial court erred in denying Bentley's request for injunction and damages. Further, Fanguy asserted that the trial court erred in failing to award him general damages and reimbursement for the fees associated with subsequently selling his home.

We reversed the trial court's sanctions against Bentley. We affirmed the trial court's judgment in all other aspects. Costs of this appeal are split equally between Bentley and Fanguy.

**REVERSED IN PART, AFFIRMED IN PART.**